John J. BARRY, Marguerite V. Barry and James Gebhardt, on their own behalf and on behalf of all others similarly situated, Plaintiffs-Appellees,

v.

CITY OF NEW YORK; New York City Board of Ethics; Edward I. Koch, as Mayor of the City of New York; and David N. Dinkins, as City Clerk, Defendants-Appellants.

James SLEVIN, Mary Slevin, Brian Clinton, Joan Clinton, Dr. Stanley C. Fell, and Frank D'Amico, on their own behalf and on behalf of all others similarly situated, Plaintiffs-Appellees-Cross-Appellants,

v.

CITY OF NEW YORK; New York City Board of Ethics; Edward I. Koch, as Mayor of the City of New York; Francis T.P. Plimpton, as Chairman of the Board of Ethics; Powell Pierpoint and Barbara Scott Preiskel as members of the Board of Ethics; and David N. Dinkins as City Clerk, Defendants-Appellants-Cross-Appellees.

Nos. 1312, 1313, 1439, Dockets 83–7010, 83–7012 and 83–7080.

United States Court of Appeals, Second Circuit.

Argued May 25, 1983.

Decided June 22, 1983.

Murray A. Gordon, New York City (Gordon, Shechtman & Gordon, P.C., Richard M. Betheil, New York City, of counsel), for plaintiffs-appellees-cross-appellants.

John P. Schofield, New York City (Schofield & Dienst, Richard A. Dienst, New York City, Karl S. Katcher, North Woodmere, Eileen M. Schofield, New York City, of counsel), for plaintiffs-appellees.

Paul T. Rephen, Asst. Corp. Counsel of the City of New York, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, Leonard Koerner, Asst. Corp. Counsel, New York City, of counsel), for defendants-appellants-cross-appellees.

Before FEINBERG, Chief Judge, and LUMBARD and WINTER, Circuit Judges.

FEINBERG, Chief Judge:

Defendants-appellants, the City of New York and various City officials, appeal from that portion of a decision of the United States District Court for the Southern District of New York, Abraham D. Sofaer, J., that struck down the public inspection provisions of a financial disclosure law enacted by the New York City Council. This is a consolidated appeal: the named plaintiffs in *Slevin* are employees of the New York City Fire Department and their spouses suing for themselves and others similarly situated; the similar suit in *Barry* is brought by employees of the Police Department and their spouses. The *Slevin* plaintiffs cross-appeal from that portion of the district court decision that upheld the constitutionality of the law insofar as it requires plaintiffs to file annual financial reports with the City Clerk. The opinion of the district court is reported at 551 F.Supp. 917 (1982). We affirm the district court's decision in part, and reverse in part.

## I. Background

In 1975, after several years of study, the New York City Council enacted Local Law 1, New York City Admin.Code § 1106–5.0. As originally passed, Local Law 1 required a variety of City officials, candidates for City office, and all City employees whose salary was $25,000 or greater, to file annual reports disclosing certain financial information. The law made the reports available for public inspection. Local Law 1 was upheld by the New York State Supreme Court in *Hunter v. City of New York,* 88 Misc.2d 562, 391 N.Y.S.2d 289 (1976). On appeal, however, the Appellate Division, First Department, invalidated the law. *Hunter v. City of New York,* 58 A.D.2d 136, 396 N.Y.S.2d 186 (1st Dept.1977), aff'd, 44 N.Y.2d 708, 405 N.Y.S.2d 455, 376 N.E.2d 928 (1978). The *Hunter* court recognized that the purpose of the law, to deter corruption and conflicts of interest among City employees, was valid. Nonetheless, the court determined that Local Law 1 was invalid insofar as it contained no mechanism to prevent automatic public disclosure of all information provided. *Hunter v. City of New York,* supra, 396 N.Y.S.2d at 189–90.

In response, the City Council passed Local Law 48 (hereafter LL 48), which took effect in July 1979. LL 48 amends Local Law 1 to permit covered employees to assert privacy claims with respect to any of the information the statute requires. As amended, the City's financial disclosure law requires annual financial reports from most elected and appointed officials, candidates for City office, and all civil service employees with an annual salary equal to or greater than $30,000.[1] Covered employees and their

---

1. LL 48 requires the following individuals to file:

   (i) the Mayor, City Council President, City Councilman, Borough Presidents, and Comptroller, and candidates for such positions (Sec. 1106–5.0a, subd. 1, 2); and

   (ii) [e]ach agency head, deputy agency head, assistant agency head, member of any board or commission other than a member of a board or commission who serves without compensation and each city employee who is a member of the managerial pay plan or

spouses must provide extensive information about their personal finances, including, among other items, the identity of professional organizations from which the employee or a spouse derives $1,000 or more in income during the preceding year; the source of capital gains of $1,000 or more, other than from the sale of a residence; the source of gifts or honoraria of $500 or more; indebtedness in excess of $500 that is outstanding for 90 days or more; and the nature of investments worth $20,000 or more.[2] Intentional violations of these reporting requirements are punishable by imprisonment not to exceed one year or a fine not to exceed $1,000, or both.

The reports must be filed with the City Clerk, and may be inspected by a member of the public on request. Unlike its predecessor, however, LL 48 explicitly permits covered individuals to request that any item or items in their reports be withheld from public inspection on the ground that inspection "would constitute an unwarranted invasion of his or her privacy." In general, a privacy claim may be made at any time. When a request for access is pending, however, a privacy claim cannot be asserted for the first time, although a prior privacy claim can be supplemented on notice of a request for access.

When an inspection request is made and a privacy claim has been asserted, LL 48 requires the public members of the City's Board of Ethics[3] to consider the following factors in determining whether public inspection would constitute an unwarranted invasion of privacy:

(a) whether the item is of a highly personal nature;

(b) whether the item in any way relates to the duties of the positions held by such person;

(c) whether the item involves an actual or potential conflict of interest.

The Board must file a written decision with the City Clerk, who may then disclose only those portions of the requested financial statement that are not exempted on privacy grounds.

After LL 48 was passed, two class actions were filed to contest it. In August 1979, Fire Department Battalion Chiefs, Deputy Chiefs, Medical Officers, and their spouses[4] sued the City of New York, its Board of Ethics and the individual members thereof, the Mayor of the City of New York, and the City Clerk, seeking to enjoin the application of LL 48 to the plaintiff class. *Slevin v. City of New York,* No. 79 Civ. 4524 (S.D.N. Y.). (For convenience, we will refer to the defendants collectively as "the City"). Shortly afterwards, New York City Police Department Captains, Deputy Chiefs, Inspectors, Deputy Inspectors, Lieutenants, Police Surgeons, and their spouses[5] filed

whose salary is thirty thousand dollars a year or more.... (Sec. 1106–5.0a, subd. 3).

2. The section of the statute detailing the information required is reprinted in full as an appendix to this opinion.

3. The Board of Ethics consists of "public members of the board of ethics appointed pursuant to section twenty-six hundred of the charter" of the City of New York. § 1106–5.0, subd. 4 f. At the present time, the Board consists of Francis T.P. Plimpton, Powell Pierpoint, and Barbara Scott Preiskel.

4. According to the record before us: At the time of the hearing in this case, the Fire Department employed only 78 Deputy Chiefs, 278 Battalion Chiefs, and 10 Medical Officers out of a total of approximately 9,500 uniformed employees. Deputy and Battalion Chiefs are responsible for supervising firefighting operations and building inspections. Battalion Chiefs supervise five to eight fire companies; deputy chiefs supervise three or four battalions. Medical Officers treat firefighters and determine their fitness for duty.

5. According to the record before us: At the time of the hearing in this case, the *Barry* plaintiffs included 22 Deputy Chiefs, 39 Inspectors, 81 Deputy Inspectors, 250 Captains, 21 Police Surgeons and some Lieutenants. Captain is the highest rank that can be attained through civil service examination. Captains normally command a precinct of 100 to 400 men. Lieutenants are a rank below captain, but the plaintiff Lieutenants are those "designated as Supervisor of Detective Squad and/or Special Assignment," and apparently have a salary and responsibilities commensurate with those of Police Captains. Police Surgeons treat police officers and determine their fitness for duty. All ranks above captain are appointed by the Police Commissioner, and involve significant supervisory responsibilities.

the companion action, *Barry v. City of New York,* No. 79 Civ. 4627 (S.D.N.Y.), against most of the same defendants, seeking to enjoin the application of LL 48 to the plaintiff class. The plaintiff officers in both cases are "uniformed city employees, occupying competitive civil service positions, who earn in excess of $30,000 annually." *Slevin v. City of New York,* supra, 551 F.Supp. at 923. The district court issued a preliminary injunction enjoining the application of LL 48 to the *Slevin* plaintiffs, and later expanded the injunction against defendants to cover the *Barry* plaintiffs. The cases were then consolidated and tried on the merits.

In a wide-ranging attack on the statute, plaintiffs claimed below that as applied to them, LL 48 violated their constitutional rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments. In a comprehensive opinion, Judge Sofaer sustained the constitutionality of the statute's filing requirements, but struck down the public inspection provisions as an unwarranted invasion of plaintiffs' privacy.

On appeal, the City challenges that portion of the lower court decision invalidating LL 48's public inspection provisions. The *Slevin* plaintiffs contend in their cross-appeal that the statute should be struck down in its entirety; the *Barry* plaintiffs argue only that the district court was correct in striking down the law's public disclosure provisions. For simplicity, we deal first with the arguments raised by the City in its appeal, and by the *Slevin* plaintiffs in their cross-appeal.

## II. *The City Appeal and the* Slevin *Cross-Appeal*

We note as an initial matter that the Supreme Court has dismissed for lack of a substantial federal question three appeals from state court decisions upholding financial disclosure laws. *Montgomery County v. Walsh,* 274 Md. 502, 336 A.2d 97 (Md. 1975), appeal dismissed, 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976); *Fritz v. Gorton,* 517 P.2d 911 (Wash.1974) (in banc), appeal dismissed, 417 U.S. 902, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974); *Stein v. How-*

*lett,* 52 Ill.2d 570, 289 N.E.2d 409 (Ill.1972), appeal dismissed, 412 U.S. 925, 93 S.Ct. 2750, 37 L.Ed.2d 152 (1973). These dismissals are dispositions on the merits, and are binding on "the precise issues presented and necessarily decided by those actions." *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977) (per curiam). But although these dismissals "caution us against finding [LL 48] unconstitutional," *Plante v. Gonzalez,* 575 F.2d 1119, 1126 (5th Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979), they cannot, as the district court put it, "fairly be said to preclude all of plaintiffs' challenges." 551 F.Supp. at 924. As the district court recognized, the statute challenged in this case, and the issues raised, differ in important respects from the statutes and issues considered in the state court decisions cited above. Id. Moreover, all three dismissals occurred prior to two Supreme Court decisions that recognized a constitutional interest "in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977); *Nixon v. Administrator of General Services,* 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977). Accordingly, this court must "undertake an independent examination of the merits." *Mandel v. Bradley,* supra, 432 U.S. at 177, 97 S.Ct. at 2241.

## A. *Right to Privacy*

The central issue in this case is whether LL 48 violates plaintiffs' right to privacy. The exact nature and scope of the right to privacy has never been fully defined. In *Whalen v. Roe,* however, the Supreme Court summarized the relevant case law as follows:

> The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.

429 U.S. at 598–600, 97 S.Ct. at 875–876 (footnotes omitted). These two interests have been characterized by the Fifth Cir-

cuit as interests in "confidentiality" and in "autonomy", respectively. *Plante v. Gonzalez,* supra, 575 F.2d at 1128.

The autonomy branch of privacy protects personal choice in "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). It is unclear whether financial disclosure laws significantly implicate any interests protected by the autonomy strand of the right to privacy. The Fifth Circuit has concluded that the autonomy interest does not cover "financial privacy." *Plante v. Gonzalez,* supra, 575 F.2d at 1132; see also *O'Brien v. DiGrazia,* 544 F.2d 543, 545 (1st Cir.1976), cert. denied, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). The Fifth Circuit reasoned that financial regulations, such as tax laws, are common in this society, and that "[t]he indirect effects caused by financial disclosure pale by comparison" with the effects of other regulations. *Plante v. Gonzalez,* supra, 575 F.2d at 1131. The court concluded that although "financial disclosure may affect a family . . . any influence does not rise to the level of a constitutional problem." Id. The district court in this case, however, after a careful analysis, decided that financial disclosure laws may sometimes "substantially, albeit indirectly, affect recognized autonomy interests." 551 F.Supp. at 928. As will be seen below, however, it is not necessary for us to decide the general applicability of the autonomy branch of privacy to financial disclosure laws.

The confidentiality branch of the right to privacy was at issue in *Whalen v. Roe,* supra. In that case, the Supreme Court upheld a New York statute authorizing the state to record the names and addresses of patients who received prescriptions for certain drugs, but stated that individuals have a protectible "interest in avoiding disclosure of personal matters." 429 U.S. at 599, 97 S.Ct. at 875. The existence of that interest was reaffirmed in *Nixon v. Administrator of General Services,* supra, 433 U.S. at 457, 97 S.Ct. at 2797, a case in which the Supreme Court upheld an Act providing for the screening of former President Nixon's presidential materials to segregate official documents for public preservation from personal documents for return to Mr. Nixon.

The nature and extent of the interest recognized in *Whalen* and *Nixon,* and the appropriate standard of review for alleged infringements of that interest, are unclear. See *J.P. v. DeSanti,* 653 F.2d 1080, 1087–91 (6th Cir.1981) (questioning whether *Whalen* and *Roe* created any general right to nondisclosure of personal information against which infringing government actions have to be balanced). Most courts considering the question, however, appear to agree that privacy of personal matters is a protected interest, see, e.g., *Plante v. Gonzalez,* supra, 575 F.2d at 1135; *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577–78 (3d Cir.1980); *Schachter v. Whalen,* 581 F.2d 35 (2d Cir.1978), and that some form of intermediate scrutiny or balancing approach is appropriate as a standard of review, see *Slevin v. City of New York,* supra, 551 F.Supp. at 930 (listing cases). The Supreme Court itself appeared to use a balancing test in *Nixon v. Administrator of General Services,* 433 U.S. 425, 458, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977). Moreover, an intermediate standard of review seems in keeping both with the Supreme Court's reluctance to recognize new fundamental interests requiring a high degree of scrutiny for alleged infringements, and the Court's recognition that some form of scrutiny beyond rational relation is necessary to safeguard the confidentiality interest. See *Plante v. Gonzalez,* supra, 575 F.2d at 1134. With these principles in mind, we turn to plaintiffs' contentions that the filing and public inspection provisions of LL 48 violate both the confidentiality and the autonomy strands of the right to privacy.

### 1. *The Filing Requirement*

The district court reached the following assessment with respect to LL 48's requirement that each covered individual file a financial report with the City Clerk:

The evidence established that autonomy and confidentiality interests will be some-

what affected by the filing requirement, but that governmental interests in deterring and detecting conflicts of interest and venality will be furthered sufficiently to justify that requirement. *Slevin v. City of New York,* supra, 551 F.Supp. at 931. After reviewing the record, we agree. Plaintiffs contend that LL 48 impairs their "constitutionally protected privacy rights in the spousal relationship" because, as the district court recognized, "[f]iling will necessarily compromise a spouse's desire to keep secret his or her finances from the filing employee...." 551 F.Supp. at 931. The district court also recognized, however, that filing of information regarding spouses was necessary to make LL 48 effective. And the district court went on to conclude that "no evidence suggested that [the filing requirement] would significantly affect the decisions whether to marry, whether and when to procreate, or other family decisions heretofore held protected by the autonomy branch." Id. at 932.

■ Plaintiffs concede that this conclusion would be valid if LL 48 furthered a substantial government purpose. We think the statute as a whole plainly furthers a substantial, possibly even a compelling, state interest. The purpose of the statute is to deter corruption and conflicts of interest among City officers and employees, and to enhance public confidence in the integrity of its government. *Hunter v. City of New York,* supra, 396 N.Y.S.2d at 187. In addition, as the district court noted, "[f]inancial disclosure laws also derive considerable strength from the benefits widely felt to be derived from openness and from an informed public." 551 F.Supp. at 921.[6] The Supreme Court has recognized a compelling state interest in the maintenance of an honest civil service, see *Lefkowitz v. Cunningham,* 431 U.S. 801, 808, 97 S.Ct. 2132, 2137, 53 L.Ed.2d 1 (1977), and that "[a]n informed public is essential to the nation's success, and a fundamental objec-

tive of the first amendment." *Slevin v. City of New York,* supra, 551 F.Supp. at 921 (citing *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 390, 89 S.Ct. 1794, 1806, 23 L.Ed.2d 371 (1969); *New York Times Co. v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964)). Whatever one may think of the intrusiveness of financial disclosure laws, they are widespread, see *Slevin v. City of New York,* supra, 551 F.Supp. at 919 n. 1, and reflect the not unreasonable judgment of many legislatures that disclosure will help reveal and deter corruption and conflicts of interest.

■ Plaintiffs argue, however, that the filing requirement is unnecessary because all the information obtained through LL 48 is already available to the City under existing procedures, where necessary to further an authorized investigation. We agree with the district court, however, that "[t]he City is not required to rely ... on departmental mechanisms to achieve its aims; it is entitled to opt for a centralized system of monitoring its employees' finances, even if the new procedure is less comprehensive than some departmental procedures." 551 F.Supp. at 933.

Plaintiffs in *Slevin,* which primarily involves officers of the Fire Department, also claim that LL 48 is unnecessary because there is no history of or opportunity for corruption among Fire Department Chiefs or Medical officers. The City contends that Fire Department employees face a variety of opportunities for corruption or conflicts of interest; e.g., a Fire Department Chief or his spouse might hold real estate investments in an area of his command subject to inspections or enforcement proceedings, or a medical officer might receive payments from a firefighter who desires to remain on paid sick leave. Plaintiffs succeeded in discrediting much of the City's evidence on this issue, and the district court determined that "opportunities for corruption" among the Fire Department plaintiffs were "limit-

---

6. The district court went on to conclude that in this case the public right to know was outweighed by plaintiffs' privacy interests, since plaintiffs do not occupy policymaking posi-

tions. As indicated below, we do not think that on this record the distinction between policymaking positions and nonpolicymaking positions is conclusive.

ed". 551 F.Supp. at 932–33. The court went on to find, however, that "[c]orruption and more subtle conflicts of interest are possible in each group of plaintiff employees." Id. at 933. We agree with this assessment. In our view, the City Council could reasonably conclude that LL 48 would help deter corruption and conflicts of interest in the Fire Department, despite its "virtually corruption-free history." 551 F.Supp. at 932 n. 11.

Plaintiffs also challenge the establishment of a $30,000 threshold disclosure level as both underinclusive and overinclusive. We consider that argument at some length below, in the context of our discussion of the public inspection provision of LL 48.

■ Plaintiffs' final privacy argument with respect to the filing requirements is that LL 48 lacks adequate security precautions to prevent inadvertent disclosure of financial reports. Cf. *Whalen v. Roe,* supra, 429 U.S. at 605–06, 97 S.Ct. at 879 (discussing importance of security measures); *United States v. Westinghouse Electric Corp.,* supra, 638 F.2d at 580. Plaintiffs do not point to any instances in which material covered by a privacy claim has been inadvertently released since the statute was enacted in 1979. We would expect that the City will treat the LL 48 reports "with the same degree of confidentiality now accorded private information in the City's personnel records," *Slevin v. City of New York,* 551 F.Supp. at 949 n. 21, and that it will take adequate precautions to prevent inadvertent disclosure of material protected by a privacy claim. On this record, we cannot say that the statute must be invalidated for lack of adequate security measures.

2. *The Public Inspection Requirement*

■ More difficult constitutional questions are raised by the provision of LL 48 that permits public inspection of plaintiffs' annual financial reports. The adverse effect of public disclosure on privacy interests is considerably greater than the effect of disclosure to the City; at the same time, the City's interest in public inspection is weaker in significant respects than its interest in obtaining financial information for internal review. Nonetheless, we think the statute, as strengthened by the privacy claim procedures, withstands constitutional scrutiny even with respect to the broad public inspection requirement.

As the district court noted, "[t]he degree of intrusion stemming from public exposure of the details of a person's life is exponentially greater than disclosure to government officials." 551 F.Supp. at 934 (citations omitted). Plaintiffs contend that public disclosure will impair their autonomy interests by forcing them to redefine their marital and family relationships. The district court found that "public filings will reveal in some instances facts that could damage a variety of associations and relationships." 551 F.Supp. at 935. In addition, the district court found that "[p]ublic disclosure will directly and materially affect the confidentiality interests of filers and their spouses," id., citing a variety of examples, such as the possibility of an embarrassing revelation "that one lives above or below one's means." Id.

We recognize that public disclosure of financial information may be personally embarrassing and highly intrusive. Unlike the district court, however, we think that the statute's privacy mechanism adequately protects plaintiffs' constitutional privacy interests.

An employee filing a financial report may make a claim of privacy with respect to any item of information sought by the City by explaining in writing the reasons for the request. Privacy claims are not adjudicated by the Board of Ethics unless a request for public inspection is made; while this may leave the filer in a state of uncertainty as to the eventual outcome of his privacy claim should an inspection request ever be made, we do not think that by itself is of constitutional significance. If a privacy claim has been made and someone requests access to the claimant's report, the matter is referred to the Board of Ethics for evaluation. As indicated above, the Board must consider three factors in evaluating a privacy claim: whether the item is highly per-

sonal; whether it relates to the claimant's duties; and whether the item involves a possible conflict of interest.

We do not think that the right to privacy protects public employees from the release of financial information that is related to their employment or indicative of a possible conflict of interest. Nor do we think the release of information that is not "highly personal" rises to the level of a constitutional violation.

Moreover, the record does not support plaintiffs' contentions that the privacy mechanism is inadequate. According to an affidavit of one of the members of the Board of Ethics, twenty-six privacy claims have come before the Board. Sixteen were granted, six were withdrawn, and one was "otherwise disposed of." Only three privacy claims were denied, apparently because insufficient information was provided in support of the claims.

When an inspection request is made, the filer is notified of the identity of the person seeking access. According to the City, the filer is then afforded the opportunity to present additional material in support of his privacy claim. If the privacy request is denied, the City informs us that the filer has ten days in which to seek reconsideration by the Board or judicial review. In light of the actual experience with the privacy procedure discussed above, we think this process affords plaintiffs an adequate opportunity to contest the disclosure of any information whose release might violate their right to privacy.

The *Slevin* plaintiffs argue that the affidavits relied on by the City to support its contentions with respect to the actual operation of the privacy claim mechanism are not properly before this court. According to plaintiffs, the affidavits, which were submitted to the district court after trial on a motion for a new trial, are inadmissible because they consist primarily of matter alleged on information and belief, and because plaintiffs did not have an opportunity to conduct discovery, cross-examine the affiants, or introduce rebuttal evidence. Ordinarily, we might be inclined to remand

the case to the district court to clarify this issue. But we see no need for that procedure here.

The contested affidavits were before the district court on defendants' motion for a new trial, which was denied even in the absence of any rebuttal evidence from the plaintiffs. Moreover, plaintiffs do not contest the accuracy of the information regarding the actual disposition of privacy claims; indeed, they rely on the same facts to support their claim that the privacy procedures are inadequate.

Plaintiffs characterize defendants' statements that filers may supplement their privacy claims when a request for access is made, and that filers are given adequate time to seek judicial review when a privacy claim has been denied as "a hitherto unknown construction of the statute," but do not actually contest the accuracy of these assertions. We note that Judge Sofaer relied on the affidavits in finding that in practice filers are afforded a "meaningful opportunity for judicial review." The statute itself explicitly authorizes the Board of Ethics to "establish procedures for the consideration" of privacy requests. Accordingly, it is clearly within the Board's power to afford filers an opportunity to supplement existing privacy claims when a request for access is made, and to provide an adequate opportunity to seek judicial review when a claim is denied. We therefore rely on the City's assurances that the privacy mechanism so operates in practice.

The City further informs us that a filing employee may specify that he does not want information released to particular persons or groups, and that the Board of Ethics may deny an inspection request if the Board "has reason to believe that the person or organization making the request is not acting in good faith or is attempting to obtain the information for some inappropriate or improper purpose." Again, plaintiffs claim that this is a novel and possibly erroneous construction of the statute, and that there is no indication in the record that the Board of Ethics operates in this fashion. Nothing in the statute requires the Board

of Ethics to consider the identity of the person seeking access, but nothing appears to bar the Board from doing so either. Whether or not the Board follows the sensible practice of considering the identity of the person requesting access, however, we think the privacy procedure is adequate to protect plaintiffs' rights. We note by way of comparison that courts have upheld financial disclosure laws that hit much closer to home and do not have any similarly broad privacy mechanism. See, e.g., *Duplantier v. United States,* 606 F.2d 654 (5th Cir.1979), cert. denied, 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981) (upholding Ethics in Government Act). However, in view of the apparent confusion as to the exact operation of the privacy mechanism, the City might be well advised to explain it more fully to the affected City personnel.

In any event, we think the City's interest in public disclosure outweighs the possible infringement of plaintiffs' privacy interests. Plaintiffs argue that the City's efforts to deter corruption and conflicts of interest would be as well served by disclosure to the City only as by public disclosure. We disagree.

In the City's view, public disclosure will significantly bolster its efforts to deter official malfeasance. The City cites the example of the 1972 Knapp Commission investigation, which uncovered extensive corruption in the Police Department, and determined that despite charges of corruption, no serious official investigation was made until the press publicized the allegations. According to the City, public disclosure of financial reports will spur City agencies and officials to be aggressive in their efforts to police corruption, if only for fear that evidence of misconduct might be found in a financial report and publicized by the press, a public interest group, or a vigilant citizen. In addition, the City contends that public disclosure will enhance public confidence in the integrity of City government if only because the reports will demonstrate that most City officials and employees are honest and not subject to conflicts of interest in the performance of their duties.

The district court was not persuaded by the City's arguments. But as the Supreme Court noted in *Whalen v. Roe,* supra, 429 U.S. at 597, 97 S.Ct. at 875 (footnotes omitted);

> State legislation which has some effect on individual liberty or privacy may not be held unconstitutional simply because a court finds it unnecessary, in whole or in part. For we have frequently recognized that individual States have broad latitude in experimenting with possible solutions to problems of vital local concern.

In this case, we cannot say that it was unreasonable for the City Council to conclude that public disclosure would materially advance the City's attempt to prevent corruption and conflicts of interest.

As noted above, plaintiffs also challenge the $30,000 threshold disclosure level. Plaintiffs contend that unlike the plaintiffs in *Plante v. Gonzalez,* supra, 575 F.2d 1119, or in *Duplantier v. United States,* supra, 606 F.2d 654, they are not all public figures, nor do they all occupy policymaking positions "with substantial discretion over the disposition of valuable goods." They conclude that the pro-disclosure balance reached in *Plante* and *Duplantier* is therefore inappropriate here. But the fact that many of the plaintiffs are not public figures or policymaking officials does not immunize them from all possibilities of corruption or conflict of interest. Indeed, as noted earlier, the district court in holding the filing requirement constitutional found that corruption and conflicts of interest are possible in each group of plaintiffs. Given the magnitude of the City's interests, we think the constitutional balance still tips in favor of permitting public disclosure.

The district court decided that the potential for corruption does not justify "across-the-board, public disclosure of finances." 551 F.Supp. at 940. In addition, the district judge found that the $30,000 level was both overinclusive and underinclusive. Id. at 940–44.

We recognize that full disclosure is burdensome, and that some City employees earning less than $30,000 might have oppor-

tunities for corruption, while others earning more than $30,000 might not. Moreover, we agree with the district court that the statute would be better if it specified the "particular job categories" that should be subject to disclosure, and defendants themselves concede that "it may now be time" to consider raising the threshold for reporting "to take into account the effect of inflation since 1979." Nonetheless, we cannot say that the statute must therefore fall. Ordinarily, legislative classifications of this sort must stand unless "very wide of any reasonable mark." *Buckley v. Valeo,* 424 U.S. 1, 83 n. 111, 96 S.Ct. 612, 665, n. 111, 46 L.Ed.2d 659 (1976) (per curiam). And the City argues that there are too many positions involved to permit classification by particular job categories, a determination that it is difficult for a court to characterize as erroneous. In any event, however, the burden imposed by an imprecise classification, and by the broad nature of the required disclosure, is mitigated by the statute's privacy mechanism, which permits covered employees to challenge the proposed release of irrelevant "highly personal" information. Accordingly, we cannot say that the law is unconstitutionally overbroad or that it violates the constitutional right to privacy.

### B. *Additional Constitutional Claims*

Plaintiffs also contend that LL 48 violates their rights under the Fourth and First Amendments. We agree with the district judge that there is little merit to these arguments.

### 1. *Fourth Amendment*

■ Plaintiffs contend that they have a reasonable expectation of privacy with respect to the disclosure of financial information, and that therefore the Fourth Amendment shields them from compelled disclosure. It is doubtful, however, whether the Fourth Amendment applies in this context. See *Whalen v. Roe,* supra, 429 U.S. at 604 n. 32, 97 S.Ct. at 878 n. 32. Moreover, as the district court noted, plaintiffs plainly have no reasonable expectation that the information sought by LL 48 can be withheld from

their employers. 551 F.Supp. at 925. In addition, even if plaintiffs have a reasonable expectation of privacy with respect to public disclosure, the Fourth Amendment prohibits only unreasonable inquiries. Cf., e.g., *California Bankers Association v. Shultz,* 416 U.S. 21, 59–70, 94 S.Ct. 1494, 1516–1521, 39 L.Ed.2d 812 (1974); *Camara v. Municipal Court,* 387 U.S. 523, 536–39, 87 S.Ct. 1727, 1734–1736, 18 L.Ed.2d 930 (1967). As stated above, we cannot say that the demands of LL 48, as limited by its privacy mechanism, are unreasonable.

### 2. *First Amendment*

■ Plaintiffs also contend that LL 48 impairs their First Amendment rights of freedom of association and speech, because it will force disclosure of organizational activities and affiliations. The district court found, however, that plaintiffs failed to demonstrate that LL 48 would "significantly inhibit the exercise of their first amendment rights." 551 F.Supp. at 927. We agree with the district court that on this record the threat that LL 48 will significantly interfere with plaintiffs' First Amendment rights is "too remote". See id.; *Plante v. Gonzalez,* supra, 575 F.2d at 1132–33.

### II. *The Barry Appeal*

The *Barry* plaintiffs challenge only the public inspection provisions of LL 48. For the most part, their arguments parallel those of the *Slevin* plaintiffs, and the *Barry* plaintiffs incorporate by reference the arguments presented by the *Slevin* plaintiffs. The principal difference between the two groups of plaintiffs, for purposes of this appeal, is the different opportunities for corruption and conflicts of interest available to each group. Unlike the Fire Department, the Police Department "has a history of pervasive corruption." *Slevin v. City of New York,* supra, 551 F.Supp. at 933 n. 12. Moreover, the district court found that "corruption in the Department ... has markedly diminished, but it persists." Id. Thus, the City's justification for seeking financial disclosure from the *Barry* plain-

tiffs and for permitting public inspection of their reports is stronger than in the case of the *Slevin* plaintiffs. Accordingly, our decision of the *Slevin* appeal controls the disposition of the *Barry* appeal.

### Conclusion

After reviewing the record and considering all of plaintiffs' arguments, we conclude for the reasons stated above that LL 48 is constitutional in its entirety as applied to the plaintiffs. Accordingly, we affirm that portion of the district court's opinion relating to the filing requirements, and reverse that portion of the opinion dealing with the public inspection requirements.

### APPENDIX

b. The report shall contain the following information:

1. List the name, address and type of practice of any professional organization in which the person reporting or his spouse, is an officer, director, partner, proprietor or employee, or serves in any advisory capacity, from which income of one thousand dollars or more was derived during the preceding calendar year.

2. List the source of each of the following items received or accrued during the preceding calendar year by the person reporting or his spouse;

(a) any income for services rendered, other than any source of income otherwise disclosed pursuant to paragraph one, of one thousand dollars or more;

(b) any capital gain from a single source of one thousand dollars or more other than from the sale of a residence occupied by the person reporting;

(c) reimbursement for expenditures of one thousand dollars or more in each instance;

(d) honoraria from a single source in the aggregate amount of five hundred dollars or more;

(e) any gift in the aggregate amount or value of five hundred dollars or more from any single source received during the preceding year, except as otherwise provided under the election law covering campaign contributions.

3. List each creditor to whom the person reporting or his spouse was indebted for a period of ninety consecutive days or more during the preceding calendar year in an amount of five thousand dollars or more.

4. List the identity of each investment and each parcel of real property in which a value of twenty thousand dollars or more was held by the person reporting or his spouse at any time during the preceding calendar year, based on the cost thereof or when acquired by means other than purchase, an estimate of the value at the time of receipt.

5. List the identity of each trust or other fiduciary relation in which the person reporting or his spouse held a beneficial interest having a value of twenty thousand dollars or more during the preceding calendar year.

6. (a) Indicate if the total amount of income received from each and every source listed (1) pursuant to the provisions of paragraph one and subparagraphs a, b and c of paragraph two of this section is at least one thousand dollars but less than five thousand dollars; at least five thousand dollars but less than twenty-five thousand dollars; at least twenty-five thousand dollars but less than one hundred thousand dollars or one hundred thousand dollars or more; and (2) pursuant to the provisions of subparagraphs d and e of paragraph two of this section is less than one thousand dollars; at least one thousand dollars but less than five thousand dollars; at least five thousand dollars but less than twenty-five thousand dollars; at least twenty-five thousand dollars but less than one hundred thousand dollars or one hundred thousand dollars or more.

(b) Indicate if the total amount of indebtedness owed each creditor listed pursuant to paragraph three of this section was at least five thousand dollars but less than twenty-five thousand dollars; at least twenty-five thousand dollars but less than one hundred thousand dollars;

at least one hundred thousand dollars but less than five hundred thousand dollars or over five hundred thousand dollars.

(c) Indicate if the total value of each investment and real property interest identified pursuant to paragraph four of this section and each beneficial interest identified pursuant to paragraph five of this section was, during the reporting period, at least twenty thousand dollars but less than one hundred thousand dollars; at least one hundred thousand dollars but less than five hundred thousand dollars or five hundred thousand dollars or more.