**Ronald EVANGELISTA, Individually and as President of the Rochester Police Locust Club, Inc., Plaintiff,**

v.

**CITY OF ROCHESTER, Peter Korn, City Manager, and Delmar Leach, Police Chief, Defendants.**

No. CIV–83–758T.

United States District Court,
W.D. New York.

March 6, 1984.

Affronti, Jesserer, Andolina & Lamb, Rochester, N.Y. (Lawrence J. Andolina, Rochester, N.Y., of counsel), for plaintiff.

Louis N. Kash, Corporation Counsel, Rochester, N.Y. (Barry C. Watkins, Rochester, N.Y., of counsel), for defendants.

## MEMORANDUM DECISION and ORDER

### TELESCA, District Judge.

This action was commenced by plaintiff, individually and as President of the Rochester Police Locust Club (the recognized bargaining agent for police officers in the City of Rochester), pursuant to 42 U.S.C. Section 1983. The complaint seeks declaratory and injunctive relief against the City of Rochester ("City"), City Manager Peter Korn and Police Chief Delmar Leach. Presently before me is defendants' motion for summary judgment pursuant to Fed.R. Civ.P. 56. The plaintiff claims that a questionnaire issued by the Rochester City Manager requiring all City employees to reveal and disclose ownership of all properties owned within the City limits (except for a single family residence) is an unconstitutional invasion of privacy. I disagree and for the reasons set forth below, the plaintiff's complaint is dismissed.

### FACTS

The relevant facts are not in dispute. On or about April 25, 1983 defendant Korn sent a questionnaire to all City employees. The preamble of the questionnaire stated that the City was faced with serious housing problems due in part to some property owners maintaining their properties below standard. The preamble went on to state that if sub-standard housing is owned by City employees, a conflict of interest is created and additionally, the employee was in violation of the City's Code of Ethics.

The questionnaire requests the employee's name, department or bureau and job title. It then asks if the employee owns rental property in the City and finally, requests a listing of all properties located within the City in which the employee has some financial interest, excluding a single family personal residence.

The complaint states that plaintiff met with the City's Corporation Counsel in regard to the questionnaire and was advised that any employee who did not supply the requested information would be subject to disciplinary action pursuant to Section 75 of the New York Civil Service Law. Plaintiff contends that the questionnaire violates his right to privacy guaranteed under the Fourteenth Amendment of the United States Constitution and seeks a declaration to that effect as well as an injunction preventing the distribution and collection of the questionnaire. Additionally, the plaintiff asserts that Section 75 of the New York Civil Service Law has no application to the disciplining of an employee who fails to complete this questionnaire, and requests that this Court exercise pendent jurisdiction and enjoin defendants from instituting any disciplinary proceedings under this section.

Defendants assert on this motion that the questionnaire does not constitute an invasion of any right or liability protected by the Fourteenth Amendment and therefore, urge the dismissal of the complaint.

### DISCUSSION

#### I.

The cases which have addressed the "right of privacy" question indicate that the right encompasses two distinct types of interests. "One is the individual interest in

avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions". *Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). In *Plante v. Gonzalez,* the Fifth Circuit termed these two distinct interests, "confidentiality" and "autonomy", respectively. 575 F.2d 1119, 1128 (5th Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). It is clear that it is the confidentiality interest which plaintiff contends is being infringed upon by defendants in this case. He argues, rather forcefully, that the City of Rochester has no valid purpose or reason for compelling the disclosure of private financial matters (property ownership) and therefore that information is constitutionally protected.

### A.

In *Barry v. City of New York,* 712 F.2d 1554 (2nd Cir.1983), the Second Circuit essentially dealt with this issue in reviewing the constitutionality of a local law passed by the City of New York which compelled disclosure of certain financial information [1] by City employees and their spouses. That law required the filing of such information and also provided for public disclosure unless the employee contended that doing so would "constitute an unwarranted invasion of privacy". The law contained a provision for the City Board of Ethics to review the claim of privacy and determine if indeed the information should not be made public. *Id.* at 1557.

In deciding whether the *filing requirement* itself was a denial of the right of privacy, the Second Circuit employed "an intermediate level of scrutiny or balancing approach". *Id.* at 1559. After reviewing the reasons set forth for the enactment of the law in question, the court concluded that the law furthered a "substantial governmental purpose" and was, therefore, valid. *Id.* at 1560. The court recognized that privacy "... interests will be somewhat affected by the filing requirement, but that governmental interests in deterring and detecting conflicts of interests and venality will be furthered sufficiently to justify that requirement". *Id.; Slevin v. City of New York,* 551 F.Supp. 917, 931 (S.D.N.Y.1982). In affirming the lower court's decision, the Second Circuit went on to state: "The purpose of the statute is to deter corruption and conflicts of interest among City officers and employees and to enhance public confidence in the integrity of its government." *Barry v. City of New York, supra,* 712 F.2d at 1560. The court concluded that: "The statute as a whole plainly furthers [this] substantial, possibly even ... compelling, state interest." *Id.*

### B.

The present case presents a different type of "intrusion" than that involved in *Barry.* Here, City employees are not asked for a wide range of financial information about themselves and their spouses, but rather, are asked only to provide information concerning their ownership of rental property within the City. Defendant Korn asserts in his affidavits that several newspaper articles have appeared which indicated that certain City employees owned properties which were in violation of housing codes, and that one of these employees was a firefighter. The affidavit contends that there is a growing public perception that City employees, and particularly firefighters (whose co-workers would be assigned to make such inspections), were receiving preferential treatment in regard to building code violations. Such perceived "conflicts of interest" whether or not they actually exist, were a major factor behind Korn's decision to issue the questionnaire.

---

1. The following was information solicited by the local law at issue in the *Barry* case from city employees who earned in excess of $30,000.00 per year: (1) The identity of professional organizations from which the employee or spouse derives more than $1,000.00 per year; (2) The source of capital gains of more than $1,000.00 or more by the employee or spouse; (3) Sources of gifts of $500.00 or more to the employee or his spouse; (4) Indebtedness of $500.00 or more that is outstanding for more than 90 days; and (5) The nature of investments worth $20,000.00 or more.

Another major factor was apparently the generally poor condition of the City's rental housing properties and the desire to insure that City employees were not contributing to the problem.

On balance, I believe that this is a *minimal* governmental intrusion for a limited and legitimate purpose. Plaintiff argues that this case is distinguishable from *Barry* because the employees targeted here are not elected officials and policy makers. I find this argument unpersuasive. The purpose of this questionnaire is to ward off possible corruption or conflicts of interest at low levels of government, and to correct public perceptions that such conflicts are indeed occurring. Thus, the questionnaire herein, and the disclosure law in *Barry*, were targeted at the specific group of employees where the problem was perceived. That the groups were different in the two cases presents a distinction without a difference. Moreover, though it is conceded that plaintiff's members do not themselves conduct the property inspections, it is a fair inference for the public to make that police officers may potentially exert some influence in regard to building code inspections of their own property. It is more the perception than the reality which the City seeks to combat by the questionnaire. Here, as in *Barry*, this is a substantial governmental interest. *Barry v. City of New York, supra*, 712 F.2d at 1560.

Plaintiff also makes the argument, as did plaintiffs in *Barry*, that the information requested is available to the City through other channels. However, here, as there, the City ... "is entitled to opt for a centralized system of monitoring its employees finances ...". *Slevin v. City of New York, supra*, 551 F.Supp. at 933.

Finally, plaintiff argues that because the challenged questionnaire is not the direct result of a legislative act, but rather an administrative act carried out pursuant to legislative authorization, *Barry*, and the cases cited by the Second Circuit in that decision, are not controlling here. The City Code of Ethics, (which was enacted and made a part of the City Charter by the City Council), prohibits any City employee from owning property which is in violation of City or State laws or regulations. City Charter Section 2–18(c)(a). The Code of Ethics also authorizes the City Manager to "require such disclosure, financial or otherwise, as he deems appropriate and necessary" to further the purposes set forth in the Code. City Charter Section 1–18(D). As such, I find it of little importance that the City Council did not authorize this specific questionnaire. What is important is that the City Council has authorized the City Manager to implement its clear legislative policy to require disclosure of the information requested in the questionnaire for valid and appropriate goals.

After balancing the individual's right to privacy against the alleged governmental interests put forth in defense of the questionnaire, I conclude that no constitutional violation has occurred.

## II.

Since I have held plaintiff's constitutional claim must be dismissed, I need not deal with the question of whether this Court should exercise pendent jurisdiction over the state law claim. *See United Mine Workers' v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The challenge to the utilization of Section 75 of the New York Civil Service Law against employees who refuse to complete the questionnaire is a matter of state law, which should be decided in the state courts.

## CONCLUSION

Accordingly, I hold that the City's use of the questionnaire to compel disclosure of rental property ownership within the City by its employees is not an unconstitutional invasion of privacy and therefore the plaintiff's complaint is dismissed.

SO ORDERED.