**Sharo SHIRSHEKAN and Carolyn Shirshekan, Plaintiffs,**

v.

**R. James HURST and City of Farmington, Illinois, a municipal corporation, Defendants.**

No. 86–1164.

United States District Court,
C.D. Illinois,
Peoria Division.

Sept. 11, 1987.

Robert D. Gaubas, Peoria, Ill., for plaintiffs.

Mark Puccio, Judge & Knight, Park Ridge, Ill., for defendants.

ORDER

MIHM, District Judge.

This case is presently before the Court upon the Defendants' Motion to Dismiss the First Amended Complaint for failure to state a cause of action. Previously, this Court had granted a Motion by the Defendants to dismiss the original Complaint, but the Court granted the Plaintiffs leave to replead their Complaint with more specificity as to their allegations of invasion of privacy. Court Order of November 12, 1986. The Plaintiffs repleaded their Complaint, and the Defendants responded with a renewed Motion to Dismiss. The parties briefed the issues presented in the Motion, and, after oral argument, the Court denied the Motion to Dismiss. This memorandum opinion and order explains the Court's reasons for that decision.

The Complaint alleges that the Defendants, R. James Hurst, the Mayor of Farmington, (sued in his individual and official capacity) and the City of Farmington, violated the Plaintiffs' right to privacy when they conducted a background investigation of the Plaintiff, Sharo Shirshekan. The results of the background investigation were compiled into a four page written report and the Defendants also published the results of that investigation to the Farmington City Council and others present at a public meeting of the Council. The Complaint further alleges that the background investigation was conducted without authority of law, was motivated by evil and malicious intent, and that the Defendants singled out the Plaintiff for the investigation. Furthermore, the Complaint alleges that portions of the background report were not true and that the public disclosure of the background investigation caused mental anguish, humiliation, embarrassment, damage to the professional and personal reputation, and loss of existing and future business opportunities to the Plaintiffs. Count I of the Amended Complaint alleges that the actions of the Defendants violated the Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the Plaintiffs brought this suit

pursuant to 42 U.S.C. § 1983. Count II of the Complaint alleges the same facts, but states a claim pursuant to Article 1, § 6 of the Constitution of the State of Illinois, and Count III is a claim for the common law tort of invasion of privacy.

In their Motion to Dismiss, the Defendants argue that the Plaintiffs have failed to state a cause of action because the privacy claim that forms the basis for the Complaint is not an interest protected under the United States Constitution. The Defendants cite a number of cases for the proposition that the privacy rights established by the United States Constitution involve only matters that relate to the intimate details of a person's life, such as marriage, procreation, contraception, family relationships, and child rearing. According to the Defendants, information pertaining to an individual's private financial affairs are not of this nature and would not support a cause of action for a civil rights claim of invasion of privacy.

In the alternative, the Defendants argue that Count I of the Complaint does not state a claim actionable under § 1983 because it alleges only that the public dissemination of the background report damaged the Plaintiffs' professional and personal reputation, impaired their health, caused a loss of existing and future business opportunities, and caused Plaintiffs to be subjected to public humiliation and ridicule. The Defendants argue that even though this claim could state a cause of action for defamation, it does not state a violation of the Constitution, because there is no allegation that the Defendants deprived the Plaintiffs of a recognized liberty or property interest. According to the Defendants, the claimed damage to reputation is not enough to state a claim under § 1983, because the damage to reputation is not coupled with termination from government employment.

In response, the Plaintiffs argue that there are numerous cases, such as *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), which have recognized the constitutional right to privacy, specifically the right grounded in an individual's interest in avoiding disclosure of personal matters. The Plaintiffs claim that it is this constitutional right which the Defendants have invaded without lawful justification and motivated by evil and malicious intent. Plaintiffs further argue that this is not an action merely for defamation, because the acts of the Defendants violated the Plaintiffs' constitutional rights and caused actual injury such as emotional distress, humiliation, embarrassment, and lost business opportunities.

In ruling upon a Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must review the complaint to see if it possibly states a cause of action. The well-recognized standard for review of a Motion to Dismiss is that the court must accept the allegations as true, and "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

■ Applying this standard to the facts of the case before it, the Court must decide whether the facts as alleged by the Plaintiff can support a claim for the alleged constitutional violation of the Plaintiffs' right to privacy. Although the United States Supreme Court has recognized a constitutional right to privacy, the exact boundaries of that right have never been firmly established. Thus, the question before this Court is whether the constitutional right to privacy is broad enough to encompass the factual allegations made by the Plaintiffs in their Complaint.

In *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the United States Supreme Court upheld a New York law that required physicians to identify patients for whom they had prescribed certain potentially harmful drugs. The plaintiffs, a group of patients regularly receiving prescriptions for the regulated drugs and doctors who prescribed the drugs, argued that the patient identification provi-

sions of the statute invaded the doctor-patient relationship and unconstitutionally interfered with the plaintiffs' right to privacy. The court held that neither the immediate nor the threatened impact of the patient-identification requirements in the New York Act was sufficient to constitute an invasion of any right or liberty protected by the Fourteenth Amendment. 429 U.S. at 603–604, 97 S.Ct. at 878–879.

In the course of reaching this decision, the Court explained that earlier cases characterized as protecting "privacy" had involved at least two different kinds of interests: (1) the individual interest in avoiding disclosure of personal matters, and (2) the interest and independence in making certain kinds of important decisions, such as decisions relating to marriage, procreation, contraception, family relationships, and child rearing and education. Discussing the interest in avoiding disclosure of personal matters, the Court cited with approval an article about privacy which described "the right of an individual not to have his private affairs made public by the government." *Id.* at 598 n. 24, 97 S.Ct. at 876 n. 24. The Court also discussed Justice Brandies' dissent in *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928), in which he characterized "the right to be let alone," as the "the right most valued by civilized men." The Court found, however, that the New York statute did not pose a sufficiently grievious threat to *either* interest to establish a constitutional violation.

Following *Whalen,* the Court once again addressed the privacy right issue in *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The *Nixon* case involved a challenge by former President Nixon to a law which required government archivists to review and preserve some of the former president's documents and tape recordings. The district court dismissed Nixon's constitutional challenges to the law, and the Supreme Court affirmed that decision. One of the grounds upon which Nixon challenged the law was that it invaded his right of privacy. The Court, citing *Whalen,* indicated, "One element of privacy has been characterized as 'the individual interest in avoiding disclosure of personal matters....'" 433 U.S. at 457, 97 S.Ct. at 2797. The Court explained that any intrusion into Nixon's claim of invasion of privacy would have to be weighed against the public interest in permitting archivists to screen the presidential materials of his administration. *Id.* at 458, 97 S.Ct. at 2797.

The Court noted that the Act which Nixon was challenging included regulations aimed at preventing undue dissemination of private materials and that the government would not even retain long-term control over private information—purely private papers and recordings were to be returned to Nixon under the provisions of the Act. The Court also indicated that the overwhelming bulk of the documents and tape recordings pertained not to Nixon's private communications, but to the official conduct of his presidency. The Court found that the fact that Nixon could assert his privacy claim as to only a small fraction of the material of his presidency was plainly relevant in judging the reasonableness of the screening process contemplated by the Act. On the privacy issue, the Court concluded that Nixon had a legitimate expectation of privacy in his personal communications, but found the privacy claim challenging the statute was without merit in view of the limited intrusion of the screening process, Nixon's status as a public figure, his lack of any expectation of privacy in the overwhelming majority of the materials, the important public interest in preservation of the materials, and the virtual impossibility of segregating the small quantity of private materials without comprehensive screening. 433 U.S. at 465, 97 S.Ct. at 2801.

These two United States Supreme Court cases, then, speak of a privacy interest which does relate to government disclosure of personal matters, presumably founded in the Fourteenth Amendment protection of personal liberty or the First Amendment, see, *Whalen v. Roe,* 429 U.S. 589, 599 nn. 23–25, 97 S.Ct. 869, 876 nn. 23–25. However, these cases do not clearly delineate

the exact boundaries of this constitutional right of privacy.

The United States Courts of Appeals have discussed the issue of an individual's right to privacy in his personal matters in a number of ways. For example, in *J.P. v. De Santi*, 653 F.2d 1080 (6th Cir.1981), a decision relied upon by this Court in its earlier decision of November 12, 1986, the court held:

"[T]he Constitution does not encompass a general right to non-disclosure of private information. We agree with those courts that have restricted the right of privacy to this boundary as established in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973)—those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" 653 F.2d at 1090.

The Sixth Circuit explained that not all rights of privacy or interests in non-disclosure of private information are of constitutional dimension, which would require balancing the government action against the individual's claim of privacy. On the facts of the case before it, the *De Santi* Court held that the non-disclosure of juvenile court records was not protected by a privacy right of constitutional dimensions. In reaching this decision, the Court declined to give the statements in *Whalen* and *Nixon* regarding the right to non-disclosure a broad interpretation that would recognize a general constitutional right to have disclosure of private information measured against the need for disclosure in all circumstances. The Court explained that such a broad interpretation was not called for in light of the Supreme Court's own narrow application of the concept of privacy in the *Whalen* and *Nixon* cases.

On the other hand, the Fifth Circuit in *Ramie v. City of Hedwig Village, Texas*, 765 F.2d 490 (5th Cir.1985), recognized the two "branches" of privacy interests identified in *Whalen*, explaining, "The disclosure strand of the privacy interests includes the right to be free from the government disclosing private facts about its citizens and from the government inquiring into matters in which it does not have a legitimate and proper concern." 765 F.2d at 492. In *Ramie*, the plaintiff argued that her constitutional right to privacy had been violated by the Village and certain police officers who had questioned and harassed her about her gender and religious beliefs. A jury found in favor of the plaintiff, but the Fifth Circuit reversed that decision, holding that the plaintiff had failed to prove that her constitutional right to privacy was invaded. On this point, the court indicated that in order to determine whether the questioning of the plaintiff amounted to a violation of her right to privacy, the court had to decide whether the invasion of privacy proved by the plaintiff outweighed the government's legitimate interests. The court held that the plaintiff had failed this balancing test, because the government's interests in conducting criminal investigations outweighed the slight invasion of privacy to which the plaintiff was subjected by the abusive and harassing questioning.

In *Barry v. City of New York*, 712 F.2d 1554 (2nd Cir.1983), the Second Circuit discussed the unclear nature and extent of the privacy interest recognized by the Supreme Court in *Whalen* and *Nixon*, noting that the *De Santi* case had questioned whether *Whalen* had created any general right to non-disclosure of personal information. However, the *Barry* court also indicated that most courts considering the question agree that privacy of personal matters is a protected interest and some form of intermediate scrutiny or balancing approach is appropriate as a standard of review of government action. The *Barry* Court stated that it, too, was prepared to recognize a constitutional right of privacy against which the interests underlying the challenged financial disclosure laws would have to be balanced. The court added:

"[A]n intermediate standard of review seems in keeping both with the Supreme Court's reluctance to recognize new fundamental interests requiring a high degree of scrutiny for alleged infringements, and the Court's recognition that some form of scrutiny beyond rational relation is necessary to safeguard the

confidentiality interest." 712 F.2d at 1559.

After balancing the plaintiff's privacy arguments against the interests underlying the disclosure laws and the protection provided therein, the court found that the constitutional privacy rights of the plaintiff had not been violated.

The Seventh Circuit has not clearly explained its position with regard to a constitutional right to non-disclosure of personal information. However, in *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir.1980), the Seventh Circuit struck down portions of an adult use ordinance which required the police department to make a special investigation into the background of persons applying for adult bookstore licenses and required certain detailed information be disclosed by those applying for an adult use license. The court explained that the City had offered no justification for the special investigation or disclosure of certain types of information. The court then concluded, "Because they [the investigation and disclosure requirements] invade plaintiff's privacy without any legitimate justification, they are prohibited by the First and Fourteenth Amendments." 619 F.2d at 1216. While this brief reference to protected privacy interests does not shed much light on the parameters of a constitutional right to privacy as recognized by the Seventh Circuit, it does show that the Seventh Circuit recognizes a privacy interest in a situation which does not involve decision-making that relates to family matters, marriage, procreation, abortion, or contraception.

Based upon its reading of these and other cases, the Court finds that the Plaintiffs have adequately alleged a violation of the confidentiality or non-disclosure branch of the right to privacy, as recognized by the Supreme Court in *Whalen v. Roe*. The Court's ruling should not be read as recognizing a general right to privacy, and the Court cannot at this time describe in the abstract the extent to which this confidentiality right is entitled to protection from government intrusion.

In its earlier Order, this Court stated that it was in agreement with the decision in *De Santi*, which held that the constitutional right of privacy is restricted to "those personal rights that can be deemed 'fundamental or implicit in the concept of ordered liberty.'" 653 F.2d at 1090. This description places some limits on the constitutional right to privacy, although those limits are far from clearly defined because of the inexact nature of the words "fundamental" and "implicit," words which require interpretation based upon values reflected in the law.

The Court concludes that the Plaintiffs have adequately alleged a violation of their constitutional right to privacy sufficient to withstand a Motion to Dismiss. As the cases discussed earlier suggest, the extent to which a court will recognize and protect a person's constitutional right to privacy depends upon the balancing of that privacy interest with the government interests behind its own conduct. This balancing test cannot be performed solely on the basis of the allegations of the Complaint, although the facts alleged support a cause of action. Therefore, the Defendants' Motion to Dismiss is DENIED.

Turning to a separate matter, the Court finds, after briefing and oral argument, in favor of the Plaintiffs on their Motion for Sanctions. The Court concludes that the Defendants failed, without sufficient excuse, to answer in a timely fashion to the Plaintiffs' First Amended Complaint, which caused the Plaintiffs' attorneys to prepare for and present a Motion for Default Judgment. The Court finds that it is appropriate to enter an award of attorneys' fees for the Plaintiffs' attorneys against the firm of Judge & Knight, Ltd., in the amount of $237.50 as sanctions for failure of the Defendants' attorneys to timely respond to the Plaintiffs' First Amended Complaint. These sanctions are to be paid within 30 days of this Order.