In the Matter of RUTH HANSELL, Appellant, v CITY OF LONG
BEACH et al., Respondents.

Second Department, January 23, 1978

### APPEARANCES OF COUNSEL

*Bruce J. Bergman* for appellant.

*David Schlachter, Corporation Counsel,* for respondents.

### OPINION OF THE COURT

HOPKINS, J. P.

In 1976 the City of Long Beach entered into a contract with Laurence Farbstein whereby he was employed as City Manager. The contract fixed his salary at $35,000 per annum. It then provided: "9. The City Manager may be removed from office in the manner provided by law. Should Farbstein be removed from the position of City Manager by the City Council

before the end of two (2) years from the effective date of this agreement, Farbstein shall be entitled to receive from the City a lump sum payment equal to the difference between twice the annual salary specified in paragraph 3 above and the gross amount paid to him for services rendered prior to his removal, and, in addition, shall continue to receive health and medical benefits until May 31, 1978."

Following the appointment and contract, the petitioner brought this proceeding uncer CPLR article 78, in which it was alleged that Farbstein was not qualified to serve as City Manager under the provisions of the City Charter,[1] and that the quoted paragraph of the contract was illegal and void, since it did not comply with the provisions of the City Charter.[2]

Special Term dismissed the petition, holding that the appointment of a City Manager is not reviewable under CPLR article 78, that conversion of the proceeding to an action for declaratory judgment was not warranted, and that, in any event, the contractual provision for payment to Farbstein of two years' salary upon his removal from office before the end of the two years' employment was not illegal. This appeal ensued. We reverse. The proceeding should be converted into an action for declaratory judgment, and judgment directed in favor of the plaintiff to the extent that the contractual provision is declared illegal and void.

I

The petitioner is a resident and taxpayer of the City of Long Beach. A proceeding under CPLR article 78 is not generally available to review a legislative act (Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400, 407). "Whatever evils may exist in the government

1. Subdivision 2 of section 20 of the Charter provides, in part: "The city manager shall be appointed by vote of a majority of all the councilmen for an indefinite term. He shall be chosen solely on the basis of his executive and administrative qualifications with special reference to his actual experience in, or his knowledge of, accepted practice in respect to the duties of his office as herein set forth."

2. Subdivision 3 of section 20 of the Charter provides, in part: "The city manager may be removed by majority vote of all the councilmen at any time for any reason or reasons the council may deem sufficient. Before making such action final the council shall notify the city manager of its intention to remove him and shall give him a statement of reasons and notice of thirty days during which time he shall continue to receive his salary".

of cities that are due to mistakes, errors of judgment or the lack of intelligent appreciation of official duty, must necessarily be temporary, compared with the mischief and inconvenience which judicial supervision, in all cases, would ultimately produce" *(Talcott v City of Buffalo,* 125 NY 280, 288).

■ The nature of the duties and functions of the City Manager under the statutory scheme of the City Charter makes clear that he is a public officer (cf. *People ex rel. Percival v Cram,* 164 NY 166; *Steinson v Board of Educ.,* 165 NY 431). "The indicia of a public officer, as opposed to an employee, are to be found in the nature of the office, the functions and duties performed, and the tenure of the occupant" *(Matter of Haller v Carlson,* 42 AD2d 829). He is the chief executive officer of the city (Charter, § 20, subd 1), with extensive powers (Charter, § 20, subds 1, 5, 6). The exercise of discretion in the appointment of a City Manager by the City Council requires the consideration of many factors of policy and governmental expediency which characterize the legislative process.

■ However, the City Charter prescribes certain tests which must be regarded by the members of the City Council in making the appointment. The appointee "shall be chosen solely on the basis of his executive and administrative qualifications with special reference to his actual experience in, or his knowledge of, accepted practice in respect to the duties of his office" (Charter, § 20, subd 2). Admittedly, the tests are extremely broad, subject to the interpretation of elastic concepts and the individual appraisal by each member of the City Council of the background and qualification of the prospective appointee. That does not mean that the City Council could totally ignore the statutory tests; it means, rather, that the scope of judicial review is necessarily narrow.

■ In any event, although CPLR article 78 may not afford the relief which the petitioner seeks, the question whether Farbstein properly meets the statutory standard, and the second question which is also presented by the petition—the legality of the contract—are properly within the purview of an action for a declaratory judgment (see *Boryszewski v Brydges,* 37 NY2d 361, 365; *Matter of Rapp v Onondaga Community Coll.,* 45 AD2d 922, 923). Under these circumstances, we think that the proceeding should be converted to an action for a declaratory judgment and the allegations considered on the merits.

## II

■ Because the scope of our review of the action of the City Council in making the appointment, is, as we have said, necessarily limited, we do not find that the City Council proceeded illegally in determining that Farbstein was qualified under the City Charter for the office of City Manager. He had experience from assignments in the State budgetary process at the legislative level, and apparently the City Council laid particular emphasis on that kind of experience. The evaluation of the experience of the appointee was primarily a concern of the City Council, and we cannot say that the choice of Farbstein ran counter to the City Charter's prescriptions. Of course, the City Charter's standards must be satisfied. The views of Mr. Justice FRANK in *Matter of Bergerman v Wagner* (2 AD2d 398, 400-401, affd 2 NY2d 908) have special relevance here: "Sufficient evidence was presented to Special Term, albeit for the first time, to support the commissioner's finding that his appointee possessed the minimal qualifications specified in the charter. Since, as already stated, the court may not review the commissioner's exercise of discretion beyond that point nor interfere with his power which is otherwise unlimited, there are no real issues of fact to be tried. The charter provisions which require specific aptitudes or professional licenses as a condition precedent to appointment to positions in the exempt class of city employees are designed to provide qualified persons for specialized service. There should be conscientious adherence to such provisos by those granted the power of appointment if the public service is to be benefited and the high standards intended are to be maintained. Anything less smacks of willful disregard of the legislative purpose." Thus, we do not find any violation of the City Charter in the appointment of the City Manager.

## III

■ ■ The second question raised relates to the legality of the contract. The contract is challenged because it provides for payment to Farbstein in the event of his removal before the end of two years of a lump sum equal to the difference between twice the annual salary for the office and the gross amount paid to Farbstein prior to his removal. In effect, the contract guarantees the payment of two years' salary in the event of his removal before the period of two years' service as City Manager, less whatever he has received prior to the time

of termination. It is fundamental that municipalities are legislatively created and possess only such authority as is granted to them, together with the powers reasonably incident to the authority conferred *(Whittaker v Village of Franklinville,* 265 NY 11, 14; *Matter of Torsoe Bros. Constr. Corp. v Board of Trustees of Inc. Vill. of Monroe,* 49 AD2d 461, 463). The City Charter here is explicit.

■ Subdivision 2 of section 20 provides for the appointment of the City Manager for an indefinite term. This, we take it, means at pleasure (see 4 McQuillin, Municipal Corporations [1968 rev], § 12.193, pp 74-80). That interpretation is strengthened by the language of subdivision 3 of section 20, which states clearly that the City Manager may be removed "at any time for any reason or reasons the council may deem sufficient." There is no provision in the City Charter for the employment of the City Manager under a contract. As the City Manager is a public officer, the municipality is powerless to deviate by an agreement from the provisions of law governing the office *(Matter of Sullivan v Taylor,* 279 NY 364, 369-370).

Under a statute remarkably parallel in language and effect to the City Charter, it has been held that a school superintendent cannot enjoy the benefits of an employment contract. Section 2507 of the Education Law provides that the board of education may appoint a superintendent of schools for a five-year term, without conferring the right on the board to make a contract with the superintendent. We have said that the absence of a provision authorizing the making of a contract invalidates a contract with the superintendent *(Smith v Helbraun,* 21 AD2d 829; semble *Downey v Lackawanna City School Dist.,* 51 AD2d 177).

■ In addition, the contractual provision offends the constitutional prohibition against gifts of public moneys (NY Const, art VIII, § 1). As was said in *Matter of Boyd v Collins* (11 NY2d 228, 234): "If school board members can avoid embarrassment by paying a year's salary to get rid of a teacher, then a board can pay such salary for 5 years or for life. Where would board members ever get such a power?"

### IV

It follows that the judgment must be reversed, the proceeding converted to an action for a declaratory judgment, and judgment granted in favor of the plaintiff against the defend-

ants to the extent of declaring that paragraph 9 of the contract dated June 3, 1976 is illegal and void.

DAMIANI, MARGETT and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered April 7, 1977, reversed, on the law, without costs or disbursements; proceeding converted to an action for a declaratory judgment; and it is declared that paragraph 9 of the contract between the City of Long Beach and Laurence Farbstein, dated June 3, 1976, is illegal and void.