**Olga IGNERI, Individually and as Chairwoman of the Richmond County Republican Committee, Joseph Igneri, Howard Lim, Jr., Individually and as Chairman of the New York County Conservative Party Committee and Joyce Lim, Plaintiffs,**

v.

**Elizabeth D. MOORE, Chairwoman of the New York State Ethics Commission, and Joseph J. Buderwitz, Jr., Angelo A. Costanza, Norman Lamm and Robert B. McKay, Members of the New York State Ethics Commission, Defendants.**

**No. 89–CV–517.**

United States District Court, N.D. New York.

June 27, 1989.

DeGraff, Foy, Conway, Holt–Harris & Mealey (David F. Kunz and Kirk Lewis, of counsel), Albany, N.Y., for plaintiffs.

Robert Abrams, Atty. Gen., State of N.Y. (David Roberts, of counsel), Albany, N.Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McAVOY, District Judge.

### I.

On July 2, 1987, the New York State Legislature enacted the "Ethics in Government Act," legislation unanimously approved by the State Senate and Assembly as a part of an "effort[ ] to restore public trust and confidence in government," Governor's Approval Memorandum, 1987 N.Y. St.Legis.Ann. 279, 280 [also included in Bill Jacket for L.1987, ch. 813 (Senate Bill 6441)], "by limit[ing] opportunities for abuse of official positions and eliminat[ing] any appearance of undue influence or illegal profit-taking by executive officers and employees, legislative officers and employees, elected officials, party officers and candidates for office," Governor's 1987 Program Bill Memorandum, Bill Jacket for L.1987, ch. 813. This "sweeping reform" legislation, signed into law by the Governor on August 7, 1987, seeks to "establish[ ] strong ethical standards to govern the conduct of public officers and employees in all three branches of government," Governor's Approval Memorandum, *supra,* by (a) "[f]irst and foremost ... requir[ing] the filing of comprehensive financial disclosure statements to reveal income, assets and debts of reporting individuals[,] (b) ... prohibit[ing] representation before most State agencies[,] and (c) ... establish[ing] Ethics Commissions to monitor, investigate and impose sanctions for violations of the conflict of interest prohibitions and financial disclosure requirements," Governor's 1987 Program Bill Memorandum, *supra.* To

this end, the "Ethics in Government Act" (hereafter the "Act") added section 73–a to the Public Officers Law, amended section 73 of that law and added section 94 to the Executive Law, respectively.

Insofar as the financial disclosure statements are concerned, and to the extent pertinent to the dispute before the court, section 73–a requires political party chairpersons of county committees—party officials elected as provided in New York Election Law § 2–112—from counties having a population of 300,000 or more or who receive compensation or expenses, or both, during the calendar year aggregating at least $30,000 to "file an annual statement of financial disclosure containing the information and in the form set forth in [§ 73–a(3) ] ... on or before the fifteenth day of May with respect to the preceding calendar year," subject to certain exceptions. N.Y. Pub.Off.L. § 73–a(2)(a) (McKinney 1988); *see also id.* § 73–a(1)(h) (incorporating by reference the definition of "political party chairman" contained in § 73(1)(k)); N.Y. Elec.L. § 1–104(5) (McKinney 1978) (definition of "party officer").

Briefly stated, the annual statement of financial disclosure seeks detailed information about business associations of the reporting individual, that person's spouse and any unemancipated children, about the occupations or employment engaged in by this class of persons, about a wide variety of financial matters (including income, indebtedness and investments of different types) and about the reporting individual's membership in any political party, political organization or political party committee as those terms are defined in the election law. *See* N.Y.Pub.Off.L. § 73–a(3) (text appended); *see also* N.Y.Elec.L. § 1–104(3) (definition of "party") and (12) (definition of "independent body"). The financial disclosure requirements of section 73–a, which went into effect on January 1, 1989, are deemed to be "in the public interest and no adverse inference of unethical or illegal conduct or behavior will be drawn merely from compliance with [the law]." N.Y.Pub.Off.L. § 73–a(3). Section 94 of the Executive Law, however, provides procedures by which a person required to file a financial

disclosure statement can request deletion of material from the copy to be made available for public inspection pursuant to Executive Law § 94(17)(a)(1), *see* N.Y.Exec.L. § 94(9)(h) and (18)(h)(1) (McKinney Supp. 1989) (procedures relating to deletion of an item or items of information), or even an exemption from financial disclosure requirements pertaining to the reporting individual's spouse or unemancipated children, *see id.* § 94(9)(i) and (18)(h)(2) (procedures relating to limited exemption from disclosure requirements). *See also* Public Advisory Council's "Procedures to Request Deletions or Exemptions From Financial Disclosure". Nevertheless, the failure otherwise to truthfully comply with the financial disclosure provisions may result in the imposition of a civil penalty (not to exceed $10,-000) or in the criminal prosecution of a misdemeanor. N.Y.Pub.Off.L. § 73–a(4).

Insofar as the provisions in the Act pertaining to the regulation of professional and business activities are concerned, briefly stated, section 73(4) enacts a prohibition on selling goods or services to a State agency or to the City of New York unless in each case the "goods or services are provided pursuant to an award or contract let after public notice and competitive bidding," N.Y.Pub.Off.L. § 73(4) (McKinney 1988), and section 73(7) enacts a prohibition from accepting compensation for appearing before State or New York City agencies in connection with a variety of activities, *see id.* § 73(7)(a) and (b) (McKinney 1988). These provisions also went into effect on January 1, 1989.

## II.

Plaintiffs—Olga Igneri, the Richmond County Republican Party chairwoman since October 1987, Howard Lim, Jr., the New York County Conservative Party chairman since 1978, and their respective spouses—have commenced the present action challenging the constitutionality of the disclosure requirements and the limitations on their professional and business activities. More specifically, plaintiffs' complaint can be read as asserting challenges (a) to the disclosure requirements and the restric-

tions on their professional and business activities as violative of their First amendment right to freedom of association and their Fourteenth amendment right to substantive due process (in this latter regard, plaintiffs contend that it is an improper and unwarranted exercise of the State's power to impose such disclosure requirements on political party leaders in the absence of a compelling countervailing public interest), (b) to the disclosure requirements as violative of their constitutionally protected right of privacy, (c) to the disclosure requirements and the restrictions on their professional and business activities as violative of their Fourteenth amendment right to equal protection of the laws (in this regard, plaintiffs contend that sections 73 and 73–a have established arbitrary and unreasonable classifications with respect to those persons who must file these financial disclosure reports and whose professional and business activities are to be subject to restriction), and (d) to the public access provisions as violative of their Fourteenth amendment right to due process on the ground that the standard to be applied in determining requests for deletion of information is vague and is, in any event, inapplicable to county committee political party chairpersons.

Plaintiffs seek a declaration that the challenged provisions of sections 73 and 73–a are unconstitutional and that they are therefore relieved from any obligation to comply with them.

Soon after this action was commenced, the New York State Ethics Commission granted plaintiffs an extension until June 30, 1989 for filing the statutorily-mandated financial disclosure statements, thereby rendering unnecessary a decision then on plaintiffs' motion for preliminary injunctive relief. Each side thereafter moved for dispositive relief in its favor (with the knowledge nonetheless that the court would be holding an evidentiary hearing so that certain issues of fact, potentially material depending upon the substantive law eventually deemed applicable based on the ultimate view of the case taken by the court, could be developed more fully): defendants, i.e., the five members of the New York State Ethics Commission, have moved to dismiss the complaint pursuant to Rule 12(b) asserting primarily that the court should abstain under the doctrine enunciated by the Supreme Court in *Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and that the plaintiffs lack standing; alternatively, defendants have moved for summary judgment. Plaintiffs have also moved for summary judgment in their favor. As stated in their memoranda of law in support of their motion for summary judgment, and as became apparent at the hearing, plaintiffs have limited their challenge to that portion of the Act "that requires certain political party chairmen to file financial disclosure statements." Plaintiffs' Memorandum of Law at 1.

A hearing was held at which testimony was given and other evidence received and at which the parties were able to argue their respective positions in connection with and in opposition to the ultimate dispositive relief sought by both sides. This memorandum-decision incorporates the court's findings of fact and conclusions of law. For the reasons that follow, the court grants judgment to plaintiffs, and declares the financial disclosure provisions, as challenged by plaintiffs, relating to the filing of an annual financial disclosure statement by county committee political party chairpersons to be unconstitutional as violative of plaintiffs' right of privacy.

## III.

### A. *Jurisdictional Issues*

As noted above, plaintiffs raise a variety of challenges to the Act based on various provisions of the Constitution; nevertheless, the central issue in this case, as the court sees it, is whether the filing requirement of the financial disclosure provisions of section 73–a of the Public Officers Law violates plaintiffs' right to privacy. Before considering the merits of plaintiffs' privacy challenge, however, the court must address the threshold jurisdictional issues raised by defendants: standing, ripeness and, lastly, abstention under the *Pullman* doctrine.

**410**

None of the grounds advanced by defendants for dismissing this action has merit.

### 1. Standing

 Although it is true that plaintiffs cannot challenge portions of the Act that do not apply to them, plaintiffs do have standing to challenge the financial disclosure provisions of the Act in their capacities as political party chairpersons (and as spouses of these political party chairpersons) from counties with populations of at least 300,000 people. They are objecting to having to comply with the requirement that they file personal financial information to which the State would or might not otherwise have access. In the court's view, plaintiffs have demonstrated a personal stake in the outcome of this case sufficient to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of the constitutional questions raised. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). Accordingly, dismissal of this action for lack of standing, seemingly not an issue in prior challenges to financial disclosure laws, *see infra*, is not warranted.

### 2. Ripeness

 Defendants have belatedly raised the issue of ripeness or, as pertains here, plaintiffs' failure to exhaust administrative remedies. Although applicable to challenges to the fairness of procedures adopted by the government, essentially because no cause of action arises until the procedures have been tested, failure to exhaust administrative remedies has no application to challenges based on substantive rights. *See Narumanchi v. Board of Trustees of Connecticut State University*, 850 F.2d 70, 72–73 (2d Cir.1988).

### 3. Abstention

 As recently explained by the Supreme Court in *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), the *Pullman* abstention doctrine requires federal courts to abstain from decision when difficult and un-

settled questions of state law must be resolved before a substantial federal constitutional question can be decided. 467 U.S. at 236, 104 S.Ct. at 2327. Abstaining from decision enables state courts to render a dispositive interpretation of the challenged law potentially making the constitutional issue initially presented academic. *Id.; Catlin v. Ambach*, 820 F.2d 588, 591 (2d Cir.1987); *McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir.1976); *Blackwelder v. Safnauer*, 689 F.Supp. 106, 119–120 (N.D.N.Y. 1988).

In the present case, although plaintiffs, as defendants point out, refer expressly and impliedly to portions of the Ethics Act they deem to be vague and open to conflicting interpretation, resolution of all the federal issues raised (and, in particular, the challenges based on freedom of association, privacy and equal protection) do not depend on the construction of the law that state courts might give nor is the state law susceptible of an interpretation that would avoid or modify the federal constitutional issues presented. *See McRedmond*, 533 F.2d at 761; *see also Catlin*, 820 F.2d at 591. Simply stated, at the very least, plaintiffs' facial challenge to the financial disclosure provisions of the Act as violative of their right to privacy would not be obviated by a state court interpretation of those provisions, a proposition with which defendants agree. Abstention under *Pullman*, therefore, is not warranted.

Having rejected defendants' threshold jurisdictional objections, the court must now turn its attention to the merits of plaintiffs' privacy challenge.

### B. *Substantive Constitutional Issues*

 Although the precise nature and scope of the right to privacy has never been fully defined, on the basis of the Second Circuit's decision in *Barry v. City of New York*, 712 F.2d 1554 (2nd Cir.1983), financial disclosure laws, at the very least, implicate what has been characterized as the "confidentiality" branch of the right to privacy. *See id.* at 1558–1563 (citing to and relying on *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) and *Whalen v. Roe*,

429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)); *see also Eisenbud v. Suffolk County,* 841 F.2d 42 (2d Cir.1988); *Kaplan v. Board of Education of City of New York,* 759 F.2d 256 (2d Cir.1985); *Duplantier v. United States,* 606 F.2d 654 (5th Cir.1979), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981); *Plante v. Gonzalez,* 575 F.2d 1119 (5th Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). That is to say, the confidentiality branch of the right to privacy encompasses plaintiffs' claim that they have a protectible interest in avoiding disclosure of personal financial information to the government to which it would not or might not otherwise have access. *Cf. United States Dep't of Justice v. Reporters Committee For Freedom of the Press,* —— U.S. ——, 109 S.Ct. 1468, 1476–1480, 103 L.Ed.2d 774 (1989) (privacy interest in avoiding further disclosure under the Freedom of Information Act of information held by a government agency remains notwithstanding the presence of the sought after information in public records). Additionally, the appropriate standard of review to be applied by the court, again on the basis of *Barry,* for alleged infringements of that interest involves an "intermediate scrutiny" analysis, requiring the court to weigh the privacy interests at stake against the asserted governmental interests: that is, whether plaintiffs' particular privacy interests have been adversely and improperly affected depends upon a determination of whether requiring financial disclosure from county committee political party chairpersons furthers a "substantial government purpose." *Barry,* 712 F.2d at 1559–1560; *see also Eisenbud,* 841 F.2d at 45, 46; *Kaplan,* 759 F.2d at 261. If requiring financial disclosure from county committee political party chairpersons does not. further a substantial government purpose, then these plaintiffs' privacy right in not disclosing the financial information requested must prevail.

As the parties acknowledge, federal court challenges to financial disclosure laws have not been successful. *See Barry,* 712 F.2d 1554; *Duplantier,* 606 F.2d 654; *Plante,* 575 F.2d 1119; *O'Brien v. DiGra-*

*zia,* 544 F.2d 543 (1st Cir.1976); *see also Eisenbud,* 841 F.2d 42; *Kaplan,* 759 F.2d 256. Nevertheless, plaintiffs seek to have the present challenge (which they note presents an issue of first impression) distinguished from the prior cases—and most particularly from *Barry*—on the ground that there are fundamental differences between, on the one hand, public officials and employees—elected and appointed, salaried and unsalaried—and, on the other hand, officers of private political parties, who perform no governmental functions, who have not assumed positions implicating the public trust and who have no authority to influence the decision-making process of government, which mandate a different outcome. For the reasons that follow, the court concludes that such fundamental differences do exist and that, on the basis of these differences, requiring the filing of financial disclosure statements by chairpersons of private political party county committees does not further the substantial interests identified and relied upon by the State.

For their part, in support of financial disclosure, defendants argue that the Ethics Act serves the same laudable governmental interests that prompted the *Barry* court to uphold the financial disclosure provisions contained in New York City Local Law 48: namely, deterring corruption and conflicts of interest among government officials and employees, enhancing public confidence in the integrity of government and fostering an informed public. *See Barry,* 712 F.2d at 1560; *see also Eisenbud,* 841 F.2d at 46. To be sure, these governmental interests are substantial. Moreover, these State interests are repeatedly invoked in the bill jacket materials accompanying the Act as justification for imposing, among other things, the financial disclosure requirements. As noted in the Governor's 1987 Program Bill Memorandum,

> Public trust and confidence in elected and appointed public officials are fundamental and necessary conditions for a strong and stable democratic government. Favoritism and the potential for

conflicts of interest, as well as the mere appearance of such, serve to weaken and erode the public's trust and confidence in government. To enhance public trust and confidence in our governmental institutions, this bill contains strengthened prohibitions against behavior which may permit or appear to permit undue influence or conflicts of interest. It also provides comprehensive financial disclosure requirements to assure that the public is aware of all private and business interests which may influence or appear to influence public officers and employees in their official acts.

Governor's 1987 Program Bill Memorandum, *supra; see also* Memorandum of Sen. Warren Anderson, 1987 N.Y.St.Legis.Ann. at 277–278. In approving the Ethics Act legislation, the Governor observed that these laws "demonstrate our deep commitment to the honesty, integrity and accountability of our government and its officials ... [and] reaffirm ... our insistence on laws that will protect the important processes of our government." Governor's Approval Memorandum, *supra*, 1987 N.Y. Legis.Ann. at 280.

That the interests identified by the State are substantial is not enough, however, to sustain the filing requirements of the Act as they apply to plaintiffs; the State interests advanced as justification for the Act must be furthered by the requirement that county political party chairpersons file financial disclosure statements. *See Plante*, 575 F.2d at 1134. The court notes that, based upon the materials it has reviewed pertaining to the Act—materials issued both before and after passage—little, if any, consideration was given to this latter issue, which assumes some significance inasmuch, for example, as one of the purposes of the State–City Commission on Integrity in Government (the "Sovern Commission"), formed in March 1986 to make recommendations regarding reforms affecting the functioning of government, was to investigate and analyze the relationships between political party officers and the government. *See* The State–City Commission on Integrity in Government, March 11, 1986–December 18, 1986: Vol. 1 Reports

and Recommendations at 3–4 (Final Report), *quoted in* Defendants' Supplemental Reply Memorandum at 4; *see also* April 1988 Ethics in Government Act: Report and Recommendations at 34 n. 45 (two commission members expressing concern over the scope of the information sought to be disclosed, noting in part that less intrusive disclosure, more closely geared to the particular functions of the public official or employee required to file a financial statement, was preferable; the report does not otherwise question the applicability of the financial disclosure requirements to political party chairpersons). (Interestingly, the court notes in passing, the Sovern Commission did not expressly recommend in its final report financial disclosure by political party chairpersons.) As stated in the Commission's Report,

> The financial disclosure provisions should require the annual filing of financial disclosure forms by elected officials, candidates for state elective office and public officials and employees with designated policy-making or other discretionary authority. This requirement should not apply to members of state commissions which are advisory in nature and which have no authority to make binding decisions or enter into contracts.

Sovern Commission Final Report, Vol. 1 at 53; *but see id.* at 90 (noting that the Commission's earlier recommendations included requiring financial disclosure by political party leaders). The Commission, in its Final Report, did note that "[p]olitical party leaders ... should be subject to many of the provisions of the law ... [and] urge[d] the political parties themselves to supplement the law with tough codes of their own, designed to prevent the use of political positions for personal gain." *Id.* at 13.)

The constitutionality of requiring county committee chairpersons of private political parties to file annual financial disclosure statements has proved to be a troublesome issue. Nevertheless, given the duties imposed and the authority granted by State law, which serves as the only legitimate basis for deeming such a political party chairperson a "public officer," *see general-*

*ly Matter of O'Day v. Yeager,* 308 N.Y. 580, 127 N.E.2d 585 (1955); *Matter of Sullivan v. Taylor,* 279 N.Y. 364, 18 N.E.2d 531 (1939); *Steinson v. Board of Educ. of City of New York,* 165 N.Y. 431, 59 N.E. 300 (1901); *People ex rel. Percival v. Cram,* 164 N.Y. 166, 58 N.E. 112 (1900); *People v. Rathbone,* 145 N.Y. 434, 40 N.E. 395 (1895); *People ex rel. Sherwood v. State Board of Canvassers,* 129 N.Y. 360, 29 N.E. 345 (1891); *Rowland v. Mayor, Aldermen and Commonalty of the City of New York,* 83 N.Y. 372 (1880); *People ex rel. Kelly v. Common Council of the City of Brooklyn,* 77 N.Y. 503 (1879); *Petrella v. Siegel,* 136 A.D.2d 81, 526 N.Y.S.2d 137 (2d Dep't), *aff'd on other grounds,* 73 N.Y.2d 846, 537 N.Y.S.2d 124, 534 N.E.2d 41 (1988); *Matter of Hansell v. City of Long Beach,* 61 A.D.2d 84, 401 N.Y.S.2d 271 (2d Dep't 1978); *Matter of Haller v. Carlson,* 42 A.D.2d 829, 346 N.Y.S.2d 108 (4th Dep't 1973); *see also Matter of Matt v. LaRocca,* 71 N.Y.2d 154, 524 N.Y.S.2d 180, 518 N.E.2d 1172 (1987); *Kaplan,* 759 F.2d at 262, and hence for the New York State Legislature to include that class of person within the scope of the Act, the court determines that the relationship between the requirement that county committee chairpersons of private political parties file annual financial disclosure statements and the purposes of the Act and the goals sought to be achieved is at best tenuous, notwithstanding the prestige that the party office may carry and the influence that a political party chairperson may or may not wield. In short, it has not been shown how financial disclosure here will further the interests identified and relied upon by the State—or how these interests even apply to political party county committee chairpersons—so as to override these plaintiffs' interests in privacy regarding the confidentiality of their personal financial affairs given their duties and authority under State law.

Under the New York Election Law, every county political party committee must within twenty days after its election, *see* N.Y.Elec.L. §§ 2–104 and 2–106, "meet and organize by electing a chairman, a secretary, and a treasurer and such other offi-

cers as they may by their rules provide." *Id.* § 2–112(1). These officers, whose names and addresses must be filed with the state board of elections, *see id.,* must be "enrolled members of the party, but need not be members of [the county] committee[ ]." *Id.* § 2–112(2). Once elected by the committee members, county party chairpersons assume certain "official" duties and are granted a measure of authority under State law relating to the mechanics of the election process. *See* N.Y. Elec.L. §§ 2–120(1) (McKinney Supp.1989) (party chairperson required to file a statement of party positions to be filled at the primary election to be held that year); 3–204(1) (McKinney 1978) (chairman or secretary of party county committee must file a certificate of the party's recommendation for the position of election commissioner); 3–404(3) (McKinney 1978) (county committee chairperson of a political party entitled to representation on any board of elections must authenticate and file list of persons recommended for appointment by county board of elections to serve as election inspectors and poll watchers); 7–207(2)(a) (McKinney Supp.1989) (county committee chairperson of major political parties must certify representative to be present at preparation and programming of voting machines and devices); 8–500 (McKinney 1978) (county committee chairperson appoints and certifies appointment of poll watchers); 9–208(1) (McKinney Supp.1989) (county committee chairperson permitted to send a representative to be present at the recanvass of a vote); 9–209(1) (McKinney Supp. 1989) (county committee chairpersons of major political parties permitted to send a representative to the meeting of the board of elections which canvasses the ballots cast by voters whose registration poll records were missing on election day); 16–102(1) (McKinney 1978) (chairperson of political party committee given limited authority to commence a proceeding to challenge designating petitions). Whether the authority granted (with the exception of the authority granted by article 16) and the duties imposed by the Election Law are characterized as administrative, ministerial or clerical, the county committee chairper-

son's exercise of the authority granted by State law (including the authority granted by article 16) does not implicate the public trust in any meaningful way. Although, as provided by State law, county committee chairpersons are involved in the mechanics of the election process, they are not, on the basis of that law, involved in the daily operations of government whether it be in policy-making capacities or not; nor does the exercise of the authority conferred on them have any bearing on the discharge of duties by elected or appointed government officials or employees insofar as the daily operations of government is concerned; nor does any public trust exist, on the basis of the Election Law authority and duties, regarding the daily operations of government. The court fails to see any relationship between financial disclosure by political party county committee chairpersons, the exercise of authority conferred by State law and the goals sought to be achieved by the State; more to the point, defendants have not argued, much less demonstrated, that there is any relationship. That is, defendants do not predicate their arguments in support of the Ethics Act on the existence of this authority and these duties.

Noting that the Act was passed in the wake of widely publicized political scandals, defendants assert quite bluntly that it does not matter that State law does not confer on political party county committee chairpersons authority to affect the daily operations of government—i.e., that State law does not grant these chairpersons governmental functions. Rather, in support of their argument that the financial disclosure provisions of the Act further substantial State interests, defendants rely on the fact that county committee political party chairpersons have, by running for party office, voluntarily made themselves "public figures," which assumes paramount importance, according to defendants, given those "widely publicized scandals that rocked the New York metropolitan region when party chairmen holding no 'public' position were found to be using their influence to channel public funds and other favors to themselves and their friends." Defendants assert that, "[a]lthough such party chairmen were not public employees, they were, as a practical matter, 'policy makers' of a much more influential order than many public employees." Through financial disclosure, defendants argue, the State seeks to control "insider dealing" by county committee political party chairpersons and thereby restore public confidence in government.

As an initial matter, the court fails to see the significance of a political party county committee chairperson's status as a "public figure" as it relates to a chairperson's duties and to the financial disclosure provisions. That a person may have a diminished expectation of privacy with regard to certain matters by voluntarily thrusting him or herself into the "public eye" does not mean that political party chairpersons are "public officials" under State law or that the financial disclosure provisions at issue here further the goals and purposes of the Act. In short, the political party county committee chairpersons' status as "public figures," although pertinent to libel law, does not alter the analysis appropriate here; having "public figure" status does not bring with it official governmental duties bearing on the daily function of State or local government, nor does "public figure" status alone give rise to any public trust.

The political scandals referred to and relied upon by defendants as justification for the legislation at issue here seem to the court to be wholly beside the point. That, as in the case of Joseph Margiotta, former Republican Party Chairman of the County of Nassau and the Town of Hempstead, a political party chairperson may be prosecuted under federal law for mail fraud and extortion (a particularly powerful deterrent to corruption and other wrongful conduct, the court notes in passing) for activities undertaken while holding political party office arising out of a political patronage system allegedly involving a lucrative fraudulent scheme to distribute insurance commissions on municipal properties to political allies, *see United States v. Margiotta*, 688 F.2d 108 (2d Cir.1982) (referred to herein as *Margiotta II*); *United States v.*

*Margiotta,* 662 F.2d 131 (2d Cir.1981) (*Margiotta I* ), does not mean that chairpersons of private political parties are "public officers," particularly given the attributes of "public officer" status identified by New York courts when confronted with an issue regarding the scope of the term "public officer." Generally speaking, the New York cases cited previously indicate that a public officer is one who, at the very least, has been elected or appointed to discharge a duty not for his own benefit or for the benefit of private individuals but for the benefit of the public, who has been granted a portion of the sovereign power to make, execute or administer the law, whose powers have been defined by law and whose acts have the force of law. Nor does it follow that requiring financial disclosure from political party chairpersons will further the goals and purposes of the Ethics Act.

In *Margiotta II,* the court, in affirming Margiotta's conviction, essentially determined that Margiotta had crossed the line separating legitimate political patronage, on the one hand, involving "mere influence or minimum participation in the process of government" (encompassing "a wide range of conduct, from lobbying to political party activities, as to which the public has no right to disinterested service"), 688 F.2d at 111, 122, 138, and, on the other hand, fraud committed by a party official who had in fact dominated and exercised a stranglehold on local politics, *id.* at 111, 122, 138. The court concluded, in pertinent part, as follows:

> In the context of a mail fraud prosecution, we reject a per se rule precluding, as a matter of law, the finding of a fiduciary duty to the citizenry to render honest and faithful services on the part of individuals who technically hold no public office yet participate substantially in the governance of communities. We hold that as an individual who was a de facto leader of government and who was relied upon by individuals in government for the administration of governmental affairs, Margiotta could properly be found to owe a fiduciary duty to the general citizenry of Hempstead and Nassau County, the breach of which duty could lay the predicate for a violation of the mail fraud statute.

*Id.* at 138. In other words, as this court reads *Margiotta II,* a fiduciary duty to the general citizenry will exist if, on the basis of conduct engaged in by a political party chairperson, that chairperson is proved to have been a de facto leader of government who was relied upon by others in the administration of governmental affairs. *See id.* at 122 (articulating the "reliance" and "de facto control" tests applicable for determining whether a fiduciary duty existed). It follows then that a fiduciary duty does not exist *ab initio* solely on the basis of one's status as political party chairperson. However, and more to the point, that a political party chairperson may engage in conduct that may be within the purview of a federal criminal statute does not make a political party chairperson a "public official" within the scope of the State's Public Officers Law. Different statutes with different concerns and purposes are involved. Simply stated, that a political party chairperson may have "de facto control" over local governmental affairs does not make that person a "public official" under State statutory law (although that person may engage in conduct that might be within the purview of the criminal law), and it certainly cannot be that a political party chairperson who (like plaintiff Olga Igneri or plaintiff Howard Lim, Jr.) does not have such control is a "public official" under State law.

Defendants' reliance, therefore, on these political scandals and the resulting convictions to support the assertion that political party chairpersons all hold positions of "public trust" and the conclusion that requiring financial disclosure from county committee political party chairpersons will further the State's substantial interest in enhancing public confidence in government as an institution is without merit.

The mere fact that political party chairpersons hold positions that "carry substantial prestige and political influence, giving [that person] a powerful voice in[, for example,] recommending or selecting candi-

dates for office and in other political decisions," *Lefkowitz v. Cunningham*, 431 U.S. 801, 807, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1 (1977) (former section 22 of the New York Election Law requiring a political party officer, under penalty of losing party office, to testify before a grand jury concerning his conduct of the party office he occupies struck down as violative of officer's 5th amendment privilege against self-incrimination), does not yield the conclusion, as the court understands the decision in *Margiotta II*, that a political party chairperson is a "public officer" or that he or she owes the general citizenry a fiduciary duty; no "public trust" is automatically created. Simply stated, defendants attempt to prove too much by their reliance on the fact that a political party chairperson, who is first found to have dominated local governmental affairs, can be prosecuted for fraud. There is nothing inherent in the position of political party county committee chairperson that makes the exercise of influence on government inevitable; that is, the exercise of such influence, which is not per se improper, may very well be more a function of individual personality than a function of the private party position. Moreover, and perhaps quite telling, defendants have failed to explain how financial disclosure will deter even those political party chairpersons who do in fact dominate local governmental affairs from engaging in fraudulent activities or how financial disclosure by such county committee political party chairpersons will deter conflicts of interest regarding the exercise of official government authority, or how it will enhance public confidence in the integrity of government or foster an informed public who can then make intelligent decisions about matters affecting their lives whether at the ballot box or through other forms of expression. To the extent that the exercise of influence, whether by a political party committee chairperson who does in fact dominate local politics or not, may give rise to internal party corruption, it does not appear that the State has a legitimate interest in protecting the integrity of the party against the party itself, *see Eu v. San Francisco County Democratic Central Committee*, — U.S. ——, 109 S.Ct. 1013, 1025, 103 L.Ed.2d 271 (1989), and defendants squarely concede that the Act was not intended to regulate internal party organization; implicit in the latter is that the Act was not intended to keep certain, perhaps undesirable, persons from seeking political party office in the first place: as defendants state in opposition to an argument advanced by plaintiffs, "the Ethics in Government is [not] really a disguised Ethics in Political Organization Act." Defendants' Supplemental Reply Memorandum at 3.

In sum, to the limited extent that county committee political party chairpersons are "public officers" by virtue of duties imposed by the Election Law and given that county committee political party chairpersons do not possess any authority by virtue of State law which permits them to make governmental decisions or to influence the daily operations of government, the court fails to see how requiring financial disclosure from county committee political party chairpersons will further the goals and purposes of the Ethics Act. That is, it is unclear how financial disclosure will, for example, prevent or restrain the exercise of influence regarding the selection of candidates for public office (which candidate may very well not win election and who may very well have to file his or her own financial disclosure statement, *see* N.Y. Pub.Off.L. § 73–a(2)), regarding obtaining political contributions from municipal contractors and public employees, or regarding helping contractors obtain public contracts. Political party committee chairpersons are not elected by the public at large, nor are they accountable to the public nor to any government officials who, in turn, are accountable to the public at large with respect to the daily operations of government. In this regard, if a public official becomes involved in the exercise of improper influence, a variety of means exist by which that person can be removed from government service.

Although the court is mindful that issues relating to the constitutionality of State

legislation are not to be approached lightly, and although the court is well aware that recent events have sensitized all to problems concerning ethics in government, there are limits to the extent of a State's power to regulate matters within its borders. The inescapable conclusion here is that the State has exceeded those limits: requiring these plaintiffs to comply with the filing provisions of the financial disclosure law violates their right to privacy regarding the confidentiality of their personal financial information. As the Supreme Court recognized in *United States Dep't of Justice v. Reporters Committee For Freedom of the Press,* "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." 109 S.Ct. at 1476.

Having determined that the filing requirement violates plaintiffs' right to privacy, it becomes unnecessary for the court to discuss plaintiffs' other challenges to the financial disclosure provisions.

## IV.

In conclusion, the court declares that the requirement that county committee chairpersons of private political parties file annual financial disclosure statements with the State ethics commission contained in Public Officers Law § 73–a violates plaintiffs' right to privacy. Defendants are permanently enjoined from enforcing the annual financial disclosure statement filing requirement as against these plaintiffs. The Clerk is directed to enter judgment in accordance with this decision.

It is so ordered.

## APPENDIX

PAGE 1

**State of New York**
**STATE ETHICS COMMISSION**
P.O. Box 22007 / Albany, NY 12201-2007

**Annual Statement of Financial Disclosure: For calendar year _____**

1. NAME

2. (a) TITLE OF POSITION (b) DEPARTMENT, AGENCY OR OTHER GOVERNMENTAL ENTITY

(c) ADDRESS OF PRESENT OFFICE (d) OFFICE TELEPHONE NUMBER ( )

3. (a) MARITAL STATUS IF MARRIED, PLEASE GIVE SPOUSE'S FULL NAME (INCLUDING MAIDEN NAME, WHERE APPLICABLE)

(b) LIST THE NAMES OF ALL UNEMANCIPATED CHILDREN

Answer each of the following questions completely, with respect to calendar year _____, unless another period or date is otherwise specified. If additional space is needed, attach additional pages.

Whenever a "value" or "amount" is required to be reported herein, such value or amount shall be reported as being within one of the following Categories: Category A-under $5,000; Category B-$5,000 to under $20,000; Category C-$20,000 to under $60,000; Category D-$60,000 to under $100,000; Category E-$100,000 to under $250,000; and Category F-$250,000 or over. A reporting individual shall indicate the Category by letter only.

4. (a) List any office, trusteeship, directorship, partnership, or position of any nature including honorary positions, if known, and excluding membership positions, whether compensated or not, held by the reporting individual with any firm, corporation, association, partnership, or other organization other than the State of New York. If said entity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, did business with, or had matters other than ministerial matters before any state or local agency, list the name of any such agency.

| POSITION | ORGANIZATION | STATE OR LOCAL AGENCY |
|---|---|---|
| | | |

**418**

4. (b) List any office, trusteeship, directorship, partnership, or position of any nature including honorary positions, if known, and excluding membership positions, whether compensated or not, held by the spouse or unemancipated child of the reporting individual, with any firm, corporation, association, partnership, or other organization other than the State of New York. If said entity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of of said entity did business with, or had matters other than ministerial matters before, any state or local agency, list the name of any such agency.

| POSITION | ORGANIZATION | STATE OR LOCAL AGENCY |
|----------|--------------|-----------------------|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

5. (a) List the name, address and description of any occupation, employment, trade, business or profession engaged in by the reporting individual. If such activity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, did business with, or had matters other than ministerial matters before, any state or local agency, list the name of any such agency.

| POSITION | NAME AND ADDRESS OF ORGANIZATION | DESCRIPTION | STATE OR LOCAL AGENCY |
|----------|----------------------------------|-------------|-----------------------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5. (b) If the spouse or unemancipated child of the reporting individual was engaged in any occupation, employment, trade, business or profession which activity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, business with, or had matters other than ministerial matters before, any state or local agency, list the name, address and description of such occupation, employment, trade, business or profession and the name of any such agency.

| POSITION | NAME AND ADDRESS OF ORGANIZATION | DESCRIPTION | STATE OR LOCAL AGENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

6. List any interest, in excess of $1,000, excluding bonds and notes, held by the reporting individual, such individual's spouse or unemancipated child, or partnership of-which any such person is a member, or corporation, 10 percentum or more of the stock of which is owned or controlled by any such person, whether vested or contingent, in any contract made or executed by a state or local agency and include the name of the entity which holds such interest and the relationship of the reporting individual or such individual's spouse or such child to such entity and the interest in such contract. Do not list any interest in any such contract on which final payment has been made and all obligations under the contract except for guarantees and warranties have been performed, provided, however, that such an interest must be listed if there has been an ongoing dispute during the calendar year for which this statement is filed with respect to any such guarantees or warranties. Do not list any interest in a contract made or executed by a local agency after public notice and pursuant to a process for competitive bidding or a process of competitive requests for proposals.

| SELF, SPOUSE OR CHILD | ENTITY WHICH HELD INTEREST IN CONTRACT | RELATIONSHIP TO ENTITY & INTEREST IN CONTRACT | CONTRACTING STATE OR LOCAL AGENCY | CATEGORY OF VALUE OF CONTRACT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**420**

7. List any position the reporting individual held as an officer of any political party or political organization, as a member of any political party committee, or as a political party district leader. The term "party" shall have the same meaning as "party" in the Election Law. The term "political organization" means any party or independent body as defined in the Election Law or any organization that is affiliated with or a subsidiary of a party or independent body.

..............................................................................................................................

..............................................................................................................................

..............................................................................................................................

..............................................................................................................................

8. (a) If the reporting individual practices law, is licensed by the Department of State as a real estate broker or agent or practices a profession licensed by the Department of Education, give a general description of the principal subject areas of matters undertaken by such individual. Additionally, if such an individual practices with a firm or corporation and is a partner or shareholder of the firm or corporation, give a general description of principal subject areas of matters undertaken by such firm or corporation. Do not list the name of individual clients, customers or patients.

..............................................................................................................................

..............................................................................................................................

..............................................................................................................................

..............................................................................................................................

(b) List the name, principal address and general description or the nature of the business activity of any entity in which the reporting individual or such individual's spouse had an investment in excess of $1,000 excluding investments in securities and interests in real property.

..............................................................................................................................

..............................................................................................................................

..............................................................................................................................

..............................................................................................................................

9. List each source of gifts, excluding campaign contributions, in excess of $1,000, received during the reporting period for which this statement is filed by the reporting individual or such individual's spouse or unemancipated child from the same donor, excluding gifts from a relative. Include the name and address of the donor. The term "gifts" does not include reimbursements, which term is defined in Item 10. Indicate the value and nature of each such gift.

| SELF, SPOUSE OR CHILD | NAME OF DONOR | ADDRESS | NATURE OF GIFT | CATEGORY OF VALUE OF GIFT |
|---|---|---|---|---|
| | | | | |

10. Identify and briefly describe the source of any reimbursements for expenditures, excluding campaign expenditures and expenditures in connection with official duties reimbursed by the state, in excess of $1,000 from each such source. For purposes of this item, the term "reimbursements" shall mean any travel-related expenses provided by nongovernmental sources and for activities related to the reporting individual's official duties such as, speaking engagements, conferences, or factfinding events. The term "reimbursement" does not include gifts reported under Item 9.

| SOURCE | DESCRIPTION |
|---|---|
| | |

**422**

11. List the identity and value, if reasonably ascertainable, of each interest in a trust, estate or other beneficial interest, including retirement plans other than retirement plans of the State of New York or the City of New York, and deferred compensation plans established in accordance with the Internal Revenue Code, in which the reporting individual held a beneficial interest in excess of $1,000 at any time during the preceding year. Do not report interests in a trust, estate or other beneficial interest established by or for, or the estate of, a relative.

IDENTITY

CATEGORY OF
VALUE*

......................................................................................................................................... ....................

......................................................................................................................................... ....................

......................................................................................................................................... ....................

......................................................................................................................................... ....................

*THE VALUE OF SUCH INTEREST SHALL BE REPORTED ONLY IF REASONABLY ASCERTAINABLE.

12.(a) Describe the terms of, and the parties to, any contract, promise, or other agreement between the reporting individual and any person, firm, or corporation with respect to the employment of such individual after leaving office or position (other than a leave of absence).

.........................................................................................................................................

.........................................................................................................................................

.........................................................................................................................................

.........................................................................................................................................

(b) Describe the parties to and the terms of any agreement providing for continuation of payments or benefits to the reporting individual in excess of $1,000 from a prior employer other than the State. (This includes interests in or contributions to a pension fund, profit-sharing plan, or life or health insurance; buy-out agreements; severance payments; etc.)

.........................................................................................................................................

.........................................................................................................................................

.........................................................................................................................................

.........................................................................................................................................

PAGE 7 NAME: _____ PAGE 7

13. List below the nature and amount of any income in excess of $1,000 from each source for the reporting indivi-
dual and such individual's spouse for the taxable year last occurring prior to the date of filing. Nature of income
includes, but is not limited to, state salary, income from other compensated employment whether public or pri-
vate, directorships and other fiduciary positions, contractual arrangements, teaching income, partnerships, honor-
ariums, lecture fees, consultant fees, bank and bond interest, dividends, income derived from a trust, real estate
rents, and recognized gains from the sale or exchange of real or other property. Income from a business or pro-
fession and real estate rents shall be reported with the source identified by the building address in case of real
estate rents and otherwise by the name of the entity and not by the name of the individual customers, clients or
tenants, with the aggregate net income before taxes for each building address or entity. The receipt of mainten-
ance received in connection with a matrimonial action, alimony and child support payments shall not be listed.

| SELF/SPOUSE | SOURCE | NATURE | CATEGORY OF AMOUNT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

14. List the sources of any deferred income in excess of $1,000 from each source to be paid to the reporting indi-
vidual following the close of the calendar year for which this disclosure statement is filed, other than deferred
compensation reported in Item 11 hereinabove. Deferred income derived from the practice of a profession shall
be listed in the aggregate and shall identify as the source, the name of the firm, corporation, partnership or
association through which the income was derived, but shall not identify individual clients.

| SOURCE | CATEGORY OF AMOUNT |
|---|---|
| | |
| | |
| | |
| | |
| | |

**424**

15. List each assignment of income in excess of $1,000, and each transfer other than to a relative during the report-
ing period for which this statement is filed for less than fair consideration of an interest in a trust, estate or
other beneficial interest, securities or real property, by the reporting individual, in excess of $1,000, which would
otherwise be required to be reported herein and is not or has not been so reported.

| ITEM ASSIGNED OR TRANSFERRED | ASSIGNED OR TRANSFERRED TO | CATEGORY OF VALUE |
|---|---|---|
| .................................................................................... | | ................ |
| .................................................................................... | | ................ |
| .................................................................................... | | ................ |
| .................................................................................... | | ................ |
| .................................................................................... | | ................ |
| .................................................................................... | | ................ |

16. List below the type and market value of securities held by the reporting individual or such individual's spouse
from each issuing entity in excess of $1,000 at the close of the taxable year last occurring prior to the date of
filing, including the name of the issuing entity exclusive of securities held by the reporting individual issued by a
professional corporation. Whenever an interest in securities exists through a beneficial interest in a trust, the sec-
urities held in such trust shall be listed only if the reporting individual has knowledge thereof except where the
reporting individual or the reporting individual's spouse has transferred assets to such trust for his or her benefit
in which event such securities shall be listed unless they are not ascertainable by the reporting individual because
the trustee is under an obligation or has been instructed in writing not to disclose the contents of the trust to the
reporting individual. Securities of which the reporting individual or the reporting individual's spouse is the
owner of record but in which such individual or the reporting individual's spouse has no beneficial interest shall
not be listed. Indicate percentage of ownership if the reporting person or the reporting person's spouse holds more
than five percent of the stock of a corporation in which the stock is publicly traded or more than ten percent of
the stock of a corporation in which the stock is not publicly traded. Also list securities owned for investment pur-
poses by a corporation more than 50 percent of the stock of which is owned or controlled by the reporting indi-
vidual or such individual's spouse. For the purpose of this item, the term "securities" shall mean bonds, mortgages,
notes, obligations, warrants and stocks of any class, investment interests in limited or general partnerships and
certificates of deposits and such other evidences of indebtedness and certificates of interest as are usually referred
to as securities. The market value for such securities shall be reported only if reasonably ascertainable and shall
not be reported if the security is an interest in a general partnership that was listed in Item 8(a) or if the security
is corporate stock, not publicly traded, in a trade or business of a reporting individual or a reporting individual's
spouse.

425

**16. SELF/**
**SPOUSE** ISSUING ENTITY

TYPE OF
SECURITY

PERCENTAGE OF CORPORATE STOCK
OWNED OR CONTROLLED

CATEGORY OF
MARKET VALUE*

........................................................................................................ ................

........................................................................................................ ................

........................................................................................................ ................

........................................................................................................ ................

........................................................................................................ ................

........................................................................................................ ................

........................................................................................................ ................

........................................................................................................ ................

*CATEGORY OF MARKET VALUE AS OF THE CLOSE OF THE TAXABLE YEAR LAST OCCURRING PRIOR TO THE FILING OF THIS STATEMENT.

17. List below the location, size, general nature, acquisition date, market value and percentage of ownership of any
real property in which any vested or contingent interest in excess of $1,000 is held by the reporting individual
or the reporting individual's spouse. Also list real property owned for investment purposes by a corporation
more than 50 percent of the stock of which is owned or controlled by the reporting individual or such individual's
spouse. Do not list any real property which is the primary or secondary personal residence of the reporting
individual or the reporting individual's spouse, except where there is a co-owner who is other than a relative.

SELF/SPOUSE
OTHER PARTY LOCATION SIZE

GENERAL
NATURE

ACQUISITION
DATE

PERCENTAGE
OF OWNERSHIP

CATEGORY OF
MARKET VALUE

........................................................................................................... ...................

........................................................................................................... ...................

........................................................................................................... ...................

........................................................................................................... ...................

........................................................................................................... ...................

........................................................................................................... ...................

■■■■■■

18. List below all notes and accounts receivable, other than from goods or services sold, held by the reporting individual at the close of the taxable year last occurring prior to the date of filing and other debts owed to such individual at the close of the taxable year last occurring prior to the date of filing, in excess of $1,000, including the name of the debtor, type of obligation, date due and the nature of the collateral securing payment of each, if any, excluding securities reported in Item 16 hereinabove. Debts, notes and accounts receivable owed to the individual by a relative shall not be reported.

| NAME OF DEBTOR | TYPE OF OBLIGATION, DUE DATE, AND NATURE OF COLLATERAL, IF ANY | CATEGORY OF AMOUNT |
|---|---|---|
| .......... | .......................................................... | .......... |
| .......... | .......................................................... | .......... |
| .......... | .......................................................... | .......... |
| .......... | .......................................................... | .......... |

19. List below all liabilities of the reporting individual and such individual's spouse, in excess of $5,000 as of the date of filing of this statement, other than liabilities to a relative. Do not list liabilities incurred by, or guarantees made by, the reporting individual or such individual's spouse or by any proprietorship, partnership or corporation in which the reporting individual or such individual's spouse has an interest, when incurred or made in the ordinary course of the trade, business or professional practice of the reporting individual or such individual's spouse. Include the name of the creditor and any collateral pledged by such individual to secure payment of any such liability. A reporting individual shall not list any obligation to pay maintenance in connection with a matrimonial action, alimony or child support payments. Revolving charge account information shall only be set forth if liability thereon is in excess of $5,000 at the time of filing. Any loan issued in the ordinary course of business by a financial institution to finance-educational costs, the cost of home purchase or improvements for a primary or secondary residence, or purchase of a personally owned motor vehicle, household furniture or appliances shall be excluded. If any such reportable liability has been guaranteed by any third person, list the liability and name the guarantor.

| NAME OF CREDITOR OR GUARANTOR | TYPE OF LIABILITY AND COLLATERAL, IF ANY | CATEGORY OF AMOUNT |
|---|---|---|
| .......... | .......................................................... | .......... |
| .......... | .......................................................... | .......... |
| .......... | .......................................................... | .......... |
| .......... | .......................................................... | .......... |

APPLICANT:
*The requirements of law relating to the reporting of financial interests are in the public interest and no adverse inference of unethical or illegal conduct or behavior will be drawn merely from compliance with these requirements.*

**X** _____ _____
*Signature of Reporting Individual* *Date (month/day/year)*